August Eyermann, Respondent, v. M. J. D. Provenchere et al., Appellants.

March 4, 1884.

1. Special Taxes — Sewers. — The acceptance of public work by the sewer commissioner is not a judicial act, and he may correct an erroneous decision with reference thereto made by him in consequence of a clerical error.

2. —— When, owing to a clerical error the plans under which sewer work is done does not conform exactly to the ordinance, is immaterial, if the work is done in conformity to the ordinance and to the intention of the parties; and valid tax bills may issue therefor.

3. —— Ordinances. — Under the charter of the city of St. Louis, where an ordinance providing for the building of a sewer is passed on the recommendation of the board of public improvements, it is immaterial that the petition therefor was not signed by a majority of the resident property holders.

4. —— Demand — Interest — Practice. — A demand before suit is not a condition precedent to a recovery on a special tax bill, but where no demand is made, interest runs only from the date of the suit.

Appeal from the St. Louis Circuit Court, Adams, J.

Affirmed.

P. Wm. Provenchere, for the appellants: Property owners are entitled to have contracts complied with, and the commissioner has no power to dispense with contract requirements. — Schumn v. Seymour, 24 N. J. Eq. 147. The time specified in the contract for the completion of the work could not be extended after the time had expired. — Turner v. Dougherty, 53 Cal. 619; Beveridge v. Livington, 54 Cal. 54; Mahoney v. Branerman, 54 Cal. 570. Plans and specifications showing the work to be done were essential, and necessarily should have conformed with the ordinance. — Kneeland v. Furlong, 20 Wis. 437; Wells v. Burnham, 20 Wis. 112; Miller v. Pearce, 2 Cin. 47. Where an ordinance is to be passed on petition, or certain things are to be observed, they are conditions precedent. —

Cooley Const. Lim., *196, and note citing 24 Bart. 427, *528.

T. J. CORNELIUS, for .the respondent: The board in recommending, and the assembly " in passing the ordinance, necessarily exercised the discretionary power given by the statute, and must be presumed to have formed an opinion of the necessity or desirableness of the improvement." — *Young* v. *City of St. Louis*, 47 Mo. 494 ; *McCormick* v. *Patchin*, 53 Mo. 33. " The recommendation by the board of the passage of such an ordinance is a sufficient declaration of the necessity of such a sewer." — *Sheehan* v. *Martin*, 10 Mo. App. 285 ; *Eyermann* v. *Blakesley*, 9 Mo. App. 231. The sewer commissioner, having made a clerical error, may correct the same and issue amended tax bills. — *Pendergast* v. *Richards*, Mo. Sup. Ct. ; *Riley* v. *Cramer*, 51 Mo. 542 ; *Bell* v. *Hoagland*, 15 Mo. 360. The former tax bills were issued before the work required by the ordinance was completed and therefore they were null and void. — *City to use McGrath* v. *Clemens*, 49 Mo. 552 ; Freem. on Judg. (3d ed.), sects. 268 and 259. " An inspection of the record in the former case, and the agreed statement in this case, shows that the old tax bill is incorrect, and that no recovery could have been had on it according to law. The former judgment was manifestly not on the merits." — *Pendergast* v. *Richards*, 2 Mo. App. 187, 194.

THOMPSON, J., delivered the opinion of the court.

This is an action upon twenty-six special tax bills executed and delivered to the plaintiff by the president of the board of public improvements of the city of St. Louis, for constructing a sewer and branch sewers in what is known as the Arsenal Street Sewer District No. 9. The ordinance authorizing the construction of this sewer and branch sewer describes its location in the following words : " The main sewer shall be located on the east and west alley, through blocks num-

bered 2050 and 2051, and shall be made of vitrified clay pipe fifteen inches in diameter, with a branch sewer made of twelve inch vitrified clay pipe on the north and south alley in block No. 2050." The advertisement for bids for the doing of the work recited: "Drawings may be seen, and specifications and forms of contract, and blank forms for proposals may be obtained, at the office of the sewer commissioner." The bid of the plaintiff, upon which the contract was awarded to him, appears to have been made on one of these "blank forms for proposals," and recited: "The undersigned herewith proposes to do all the work necessary in the construction of a sewer in Arsenal Street Sewer District No. 9, advertised as letting No. 291, in accordance with the printed form of contract and specifications for city work," etc. The contract between the plaintiff and the city, under which the plaintiff did the work, describes the work to be done as "the work of constructing a district sewer within Arsenal Street Sewer District No. 9, as by the above mentioned ordinance specified." It also recites that "the said August Eyermann hereby covenants and agrees to do the work above mentioned in substantial and workmanlike manner, in conformity with the plans of such work on file in the office of the sewer commissioner of the city of St. Louis," etc.

Among the general stipulations of this contract were the following : —

"11. The first party shall not be entitled to any claim for damages for any hindrance or delay, from any cause whatever in the progress of the work, or any portion thereof; but such hindrance may entitle said first party to an extension of the time for completing this contract sufficient to compensate for the detention, the same to be determined by the sewer commissioner, provided he shall have immediate notice in writing of the cause of detention.

"12. The work embraced in this contract shall be begun within one week after written notice to do so shall have been given to the contractor by the sewer commissioner, and car-

ried on regularly and uninterruptedly thereafter (unless the said commissioner shall otherwise, in writing, specially direct), with such a force as to secure its full completion within seven weeks thereafter; the time of beginning, rate of progress, and time of completion being essential conditions of this contract. And if the contractor shall fail to complete the work by the time above specified, the sum of five dollars per day for each and every day thereafter, until such completion, shall be deducted from the moneys payable under this contract."

The plan of the work, as originally made in the office of the sewer commissioner, required the branch sewer to be located, not in block 2050, but in block 2051. The ordinance was drawn up in the office of the president of the board of public improvements, before being submitted to the municipal assembly, and, by a clerical error in drawing it, the branch sewer was located in block 2050, and not in block 2051; and the ordinance, as thus drawn, passed, was approved, and the contract was let under it. Now, it seems that the contractor followed the plan of the work, as he found it on file in the office of the sewer commissioner, and it resulted that he constructed the branch sewer in block No. 2051, instead of block 2050. It seems that the mistake was not discovered until after the work was completed. At all events, the work, as thus completed, was approved, and special tax bills therefor were issued to the plaintiff by the president of the board of public improvements, upon which the plaintiff brought an action against the same parties defendant who are parties defendant to the present action. In that action, the court gave an instruction to the effect that if the ordinance provided for the construction of a branch sewer on the north and south alley in block 2050, and no sewer had ever been constructed in said north and south alley, the plaintiff could not recover; and judgment was thereupon rendered for the defendants. The date of that judgment was December 14, 1881.

Thereafter, on the 4th of February, 1882, the following order was given by the sewer commissioner to the plaintiff: "You are hereby notified and directed to construct forthwith a sewer of vitrified clay pipe, twelve inches in diameter, on the north and south alley. in city block No. 2050, in Arsenal Street Sewer District No. 9, under your contract No. 259, so as to complete the work in said district as called for by ordinance No. 11,036, entitled, 'An ordinance to provide for the construction of sewers in Arsenal Street Sewer District No. 9;' and on account of unexpected delays and impediments, the time for the completion of the work under said contract is hereby extended to March 10, 1882." This, it should be observed, was nearly two years after the original order of the sewer commissioner to the plaintiff to commence work under the contract, which order was made on the 27th of January, 1880, and required him to commence and complete the work within seven weeks from February 3, 1880. Under this renewed order, the plaintiff constructed the branch sewer in block 2050, as required by the terms of the ordinance, so that it appears that he has constructed the main and branch sewers required by the terms of the ordinance, and also a branch sewer in block 2051, for which no charge against the property owners is made, and for which he gets nothing. He has been put to this delay and extra expense by a clerical error in the office of the sewer commissioner, for which he was in no wise responsible. The plaintiff recovered a judgment in the circuit court. The foregoing statement of facts is sufficient to indicate the objections which the defendants still insist upon. These objections arise chiefly on instructions given and refused.

I. The first is that the court erred in refusing to give the following instruction: "The court declares the law to be, that if the contract alleged by plaintiff was made with and subject to the following condition: 'That the work embraced in said contract should be begun within one week after writ-

ten notice so to do shall have been given to the contractor by the sewer commissioner, and carried on regularly and uninterruptedly thereafter (unless the said commissioner shall otherwise, in writing, specially direct), with such force as to secure its full completion within seven weeks thereafter, the time of beginning, rate of progress, and time of completion being essential conditions of this contract, and if the contractor shall fail to complete the work by the time above specified, the sum of five dollars per day for each and every day thereafter until such completion, shall be deducted from the moneys payable under this contract; that written notice to begin said work was given by the sewer commissioner to the contractor January 27, 1880, to commence the work one week thereafter; that said work was not uninterruptedly carried on thereafter, though the sewer commissioner did not direct that such work should be interrupted or suspended; that said work was not completed and finished till the 8th day of March, 1882; that in estimating the costs of said sewer under said contract, and in making out the special tax bills herein sued on, the president of the board of public improvements did not consider the amount of such liquidated damages, or any part thereof; that the amount of such liquidated damages was equal to or greater than the amount for which plaintiff contracted to construct said sewer, — then said special tax bills are void, and plaintiff can not recover." There was no error in refusing this instruction. The contract must be interpreted according to the plain intention of the parties to it. The clause in the contract to which this instruction referred, and which is above set out, never contemplated that the plaintiff should forfeit $5 a day for delays in completing the work where such delays were not the consequence of his own fault, but of the fault of the other contracting party. The meaning of the clause was that the contractor should forfeit $5 per day for his own delays, and not for any delay put upon him in consequence of a mistake in the

plan of the work in the office of the sewer commissioner, which he was required by the terms of the contract to follow. The contract required him to perform the work "in conformity with the plans of such work on file in the office of the sewer commissioner of the city of St. Louis, in strict obedience of the directions which may from time to time be given by such sewer commissioner or his duly authorized agents." And now, the proposition is that, for doing this, in addition to constructing one branch sewer for which he gets nothing, and of which the property owners of the sewer district get the benefit, he is to suffer a forfeiture of the entire amount due him under the contract, because of a mistake in the plans which he was thus required to follow; and this, without any attempt on the part of the property holders, resisting the payment of his tax bills, to show that they were damaged by the delay. This can not be the law.

The decision of this court in *Prendergast* v. *Richards* (2 Mo. App. 187), is decisive authority against such a conclusion. In that case, as in this, a mistake had been made in executing the work; the contractor had performed a portion of the work outside the sewer district mentioned in the ordinance. The work, as in this case, had been approved by the proper authority, the city engineer; tax bills had been issued for it, and upon one of these the contractor had brought an action, and judgment had been rendered for defendant. Then, a new assessment of the cost of the work was made, embracing only so much of it as was situated within the sewer district named in the ordinance; and upon one of these tax bills, the contractor brought a second action against the same party. It was held that the former judgment was no bar to the second action. The first tax bills were merely void, and the city engineer, by making an erroneous assessment of the cost of the work and issuing these void tax bills, did not exhaust his power or disable himself from afterwards making a correct assessment, and issuing correct bills.

If we understand the position of the learned counsel for the defendants, it is that a distinction exists between this case and that, in this: that in that case, the act of assessing the cost of the improvement, and of issuing tax bills therefor, was a ministerial act; but that, in this case, the act of the sewer commissioner in approving the work, is a judicial act; that having acted, he exhausted his power, and could not, after the lapse of two years, recur to the matter and reverse his former decision. We do not think that the exercise of the power to approve and accept public work on the part of such a commissioner is a judicial act in the sense that, when the officer renders his decision, if in rendering it he makes a mistake, which the records of his office show to be a mistake, in consequence of a mere clerical error, he disables himself from thereafter correcting it. This would be a highly inconvenient rule; it would entail forfeitures upon contractors, and increase the risks, already great, which they run in accepting such contracts, by making them insurers of the correctness of acts of an official of the city, over whose records and acts they can have no control; and it would thereby have the effect of obliging them, for their own protection, to demand higher prices for the doing of city work. All these obstructive measures and technical defences upon which property owners resist the payment of special tax bills after getting the benefit of the work, result in permanent injury to the city and to the holders of property therein. Let us see what the assumption that this act of the sewer commissioner is a judical act would lead us to. If it is a judicial act, when he commits an error which renders his decision void, his error could be corrected by a writ of *certiorari*, issuing from the circuit court, or from this court, or even from the supreme court. But who ever imagined that one of these courts could issue its *certiorari* to the sewer commissioner of St. Louis, or to the street commissioner, for the purpose of bringing up his record in a particular case and correcting his errors? The

acts of these officers are ministerial, and not judicial. The mere fact that an official act requires the exercise of judgment and deliberation does not make it a judicial act. The decision of justices of the peace in examining persons charged with crime, and in holding them to bail, or committing them without bail, were, at one time, regarded as ministerial acts.

It is not denied to be a sound principle that, when a special tribunal is created with a particular jurisdiction and with limited powers, whenever it exerts its power upon a given subject-matter, its jurisdiction becomes exhausted and at an end ; in other words, it becomes *functus officio*. *Ex parte Randolph*, 2 Brock. 447 ; *Re Brown*, 4 Colo. 438 ; *Mills* v. *Collett*, 6 Bing. 85 ; *Crepp* v. *Durden*, Cowp. 640. But this principle has been generally invoked in favor of liberty, and to prevent oppressive action on the part of inferior jurisdictions ; and even here, its application has been by no means uniform. *Ex parte Reed*, 100 U. S. 13. The decision of the supreme court of the United States in the case last cited, and the decision of this court in *Prendergast* v. *Richards* (*supra*), show that it is not a principle of uniform application. In the present case we are asked to apply it so as to produce bald injustice and serious public inconvenience. We decline so to do. If we are to decide such a question upon technical analogies, we can find analogies which will support the action of the sewer commissioner and of the president of the board of public improvements, as well as analogies which will overturn their action. It has been held that, where a naval court-martial, assembled to try a particular officer upon a particular charge, renders its judgment, it does not thereby exhaust its power so that it can not, afterwards, in conformity with the recommendation of the admiral, alter the same; such an alteration of its original sentence may be irregular, but the sentence, as thus altered, is not thereby rendered void. *Ex parte Reed*, *supra*. Another analogy

may be found in the power which courts of record always exercise of correcting erroneous entries, even after the lapse of a term, and after an appeal to a higher court, where matter remains of record from which the correction may be made by a *nunc pro tunc* entry. The law is also very liberal in allowing ministerial officers, such as sheriffs or constables, to amend their returns ; and this court has gone so far as to hold that a constable might amend his return to an attachment by garnishment even after the cause had been to this court, and been remanded. *Branahl* v. *Watson*, 11 Mo. App. 587.[1] In the present case, the whole matter appears to have been involved in a clerical error in the plan of the work embraced in the contract as it was on file in the office of the sewer commissioner, by which, in a certain particular, the plan did not pursue the ordinance. Now, the proposition is that, because the sewer commissioner, in approving the work, overlooked this clerical error, and approved a piece of work which had not been completed in conformity with the ordinance, his power to require the execution of the contract was exhausted ; the clerical error could never be corrected ; the contractor must lose all that he was to get under the contract for a large amount of work done in conformity thereto, and the property owners must get the benefit of this work without paying for it. We do not think the rule which is here invoked requires us to hold this, and we are sure that it would be against good sense and plain justice so to hold.

II. The next proposition seems to be merely a different way of stating the preceding objection. It is that the plans and specifications showing the work to be done were essential ; that these must necessarily conform to the ordinance, or else the contract requiring them to be complied with is

[1] NOTE. — In furtherance of justice, sheriffs are allowed to amend their returns after they have gone out of office, and after the lapse of many years. *Spellinger* v. *Gaff*, 112 Ill. 29, and cases cited; *Muldrow* v. *Bates*, 5 Mo. 214; *Miles* v. *Davis*, 19 Mo. 408; *Blaisdell* v. *Steamboat*, 19 Mo. 157; *Scruggs* v. *Scruggs*, 46 Mo. 271.

void. We think that enough has already been said under this head. The decision of this court in *Prendergast* v. *Richards*, shows that this position is not well taken. In that case, it sufficiently appears that the plan of the work embraced work not named in the ordinance, namely, work outside the sewer district. But it was held that this contract was not, for that reason, *ultra vires* and void. It was only void as to the excess; that is, as to the work done outside the sewer district. That might be rejected as surplusage, and the contract remain valid as to the work within the sewer district, by which we understand the work embraced within the ordinance.

The learned counsel for the defendants, however, press upon our consideration the argument that the work which was advertised was the work embraced in the plan and specifications in the office of the sewer commissioner to which the advertisement referred; that the contract for the doing of the work was also a contract for the doing of it in accordance with the same plan and specifications; and that, as this plan and these specifications did not conform to the ordinance in respect of the location of the branch sewer, the contract is wholly void, and could not become the foundation of any valid charge against the property owners, because it was not a contract to do the work which was required by the ordinance. This is all true, and yet it was a contract to do the work which was required by the ordinance. The advertisement for bids did not, it is true, refer to the ordinance, but it did refer to drawings and specifications which might be seen in the office of the sewer commissioner. It is equally true, that the plaintiff's bid did not refer to the ordinance, but it was a proposition to do the work "in accordance with printed form of contract and specifications for said work," etc. But the contract itself, after reciting the number and date of the ordinance refers to the work to be done as "a district sewer within Arsenal Street Sewer District No. 9, as by the above mentioned ordinance specified." It thus appears that the

contract was a contract to do the work specified in the ordinance; but there was, at the same time, this incongruity in it, that it was also a contract to do the work " in conformity with the plans of such work on file in the office of the sewer commissioner of the city of St. Louis," which plans, in respect of the location of the branch sewer, did not conform to the ordinance.

Now, it is not claimed that either the charter or any general or special ordinance requires the letting of contracts for public work to be in conformity with plans and specifications on file in any departmental office of the city. Such plans and specifications are not required by law in order to the validity of such a contract. There is, however, great propriety in requiring every letting of public work to be made in accordance with definite plans and specifications previously made and open to the inspection of bidders, in order that those proposing to bid may see beforehand exactly what their contract will require them to do. Such a plan and specifications were, it seems, open to the inspection of bidders in this case, and it is difficult to say that this contract was not made with reference to the same. It must also be conceded that a contract conforming to the ordinance is necessary to the protection of the public in respect of the letting of public work. But when we consider the powers of the board of public improvements in respect of the construction of lateral sewers, and the powers reserved to the sewer commissioner by the terms of this contract, and the fact that the bidding is for specified elements of work according to measurement, and is not a lumping bid, it is difficult to see how the location of this lateral sewer in one block, rather than in the other, could have had any influence on the amount of the bid. The charter of the city contains this provision in regard to the powers of the board in the construction of branch sewers: " Public sewers shall be established and constructed along the principal courses of drainage, at such times, to such extent, of such dimensions and material, and under such regulations

as may be provided by ordinance, to be approved by the board of public improvements, and there may be constructed such branches to sewers already constructed, or to be constructed, as may be considered expedient by said board." Charter of St. Louis, art. VI., sect. 21. The contract under which this work was done, apparently having reference to the power thus conferred upon the board of public improvements, of which board the sewer commissioner is a member, contained the following clause: "The sewer commissioner shall have the right to make alterations in the line, grade, plan, form, or dimensions of the work herein contemplated, either before or after the commencement of the work. If such alterations diminish the quantity of work to be done, they shall not constitute a claim for damages or for anticipated profits on the work dispensed with; if they increase the amount of work, such increase shall be paid for according to the quantity actually done, and at the price or prices stipulated for such work in this contract." The sealed bid of the plaintiff, in conformity with which this contract was made, was to do certain items of work involved in the making of the sewer, according to certain prices to be determined by measurement, as follows:—

| | |
|---|---|
| "For earth excavation per cubic yard, thirty-two cents | $ 32 |
| "For brick masonry    "    "    $7 . . . . . . . | 7 00 |
| "For twelve inch pipe sewers per foot, linear, complete, $1.20 . . . . . . . . . . . . . . . . | 1 20 |
| "For fifteen inch pipe sewers per foot, linear, complete, $1.40 . . . . . . . . . . . . . . . . | 1 40 |
| "For six inch junction laid, each $1 . . . . . . . | 1 00 |
| "For nine inch    "    "    "    1 . . . . . . . . | 1 00 |
| "For twelve inch  "    "    "    1 . . . . . . . . | 1 00 |
| "For fifteen inch "    "    "    1 . . . . . . . . | 1 00 |
| "For inlet stone, per square foot, furnished and set, $1 . . . . . . . . . . . . . . . . . . | 1 00 |
| "For cast iron in inlets and manholes per lb., five cents . | 5 |
| "For wrought iron in inlets and manholes per lb., ten cents . | 10 " |

These things taken together, make it clearly appear that the prices bid must have been determined upon, not with reference to the particular location of the branch sewer, which location the board of public improvements might, it seems, have changed. At least it does not seem that this was so important an element in the contract that a mistake in it would vitiate the contract entirely, especially where it appears that the contract was finally executed as the ordinance intended it should have been made, with an additional branch sewer thrown in, for which no charge was made or allowed. Both parties to the contract intended to make a contract in accordance with the ordinance. The contract was finally executed as both parties intended it should be made; it was also executed as it was made; and, hence, there seems to be no merit in the defence set up.

III. The defendant offered and the court refused the following instruction : —

" The court declares the law to be that if a petition of property holders resident in block No. 2051 was presented to the board of public improvements, that said petition was referred by said board to the sewer commissioner, and the report thereon by said commissioner shows upon its face that the petition was not the petition of the majority of the property holders resident in the block or blocks therein mentioned; that said report is indorsed on said petition ; that said petition is referred to in the indorsement on said ordinance No. 11,036, providing for the construction of a district sewer, as communicated to the municipal assembly by said board ; that the said board made no recommendation concerning said ordinance other than to prepare and present the same pursuant to said petition ; that then said ordinance, No. 11,036, providing for the construction of a district sewer in Arsenal Street Sewer District No. 9, is void, and plaintiff can not recover."

We see no error in refusing this instruction. 1. We do not gather from the face of the report of the sewer com-

missioner that the petitioners were a minority of the resident property owners. 2. If such were the fact, it would not invalidate the ordinance, because the passage of the ordinance was recommended by the board of public improvements, and, as Col. Flad, the president of the board testified, the board may have had other reasons than the petition for recommending it. At all events, the recommendation of the board, whatever may have been the ground of its recommendation, and the subsequent passage of the ordinance, must be held to relieve the contractor from the obligation of inquiring as to the grounds on which the work is ordered to be done. *Sheehan v. Martin,* 10 Mo. App. 285, 288.

IV. A point is made that the court erred in refusing an instruction to the effect that if, in the former suit, it has been found that the work had been done in conformity to plans at variance with the ordinance, and judgment had been given in that suit for the defendants, then the plaintiff could not recover. There is nothing in this point that has not already been answered. For reasons already stated, this instruction was properly refused.

V. The next objection is that the president of the board had no authority to issue these bills. We think this objection is sufficiently answered in what has already been said. The former bills were not valid, because the work had not been completed in conformity with the ordinance. This was conclusively adjudged by the judgment of the circuit court in favor of the defendants in the former suit. The case then stood as though the work had not been completed, and as though no bills had been issued. The sewer commissioner thereupon directed the completion of the work, and, upon this being done, the present bills were issued. As the former bills were of no validity, they did not exhaust the power of the president of the board of public improvements to issue the present bills. *Prendergast v. Richards,* 2 Mo. App. 187.

VI. The defendants asked and the court refused the following instruction: —

" The court declares the law to be that if one of the defendants has a life estate in the lots of ground described in plaintiff's petition, and that the other defendants have but a remainder in said lots after said life estate, and demand for the payment of said bills herein sued upon was made only of one of the remainder-men, that then plaintiff can not recover."

It appears that demand was made before the bringing of the suit only upon one of the defendants, and the court treated the bringing of the suit as the first demand, and made the accruing of interest commence accordingly, having reference to the language of the charter. This language is as follows : " Said tax bill shall be and become a lien on the property charged therewith, and may be collected of the owner of the land, in the name of and by the contractor, as any other claim in any court of competent jurisdiction, with interest at the rate of ten per cent per annum after thirty days from demand of its payment date ; and if not paid within six months after such demand, then at the rate of fifteen per cent per annum from the date of said demand. In case the owner of the ground is a non-resident of the state, suit may be brought by attachment, which shall be a demand of its payment." Charter St. Louis, art. VI., sect. 25. The object of the demand here provided for evidently was to give the property-owner an opportunity, by paying the bill, of stopping the running of interest. We see nothing to take the case out of the general rule that the bringing of a suit is, of itself, a demand. The language of the charter does not imply that a demand prior to the bringing of a suit is to be a condition precedent to a recovery on the tax bill.

The judgment of the circuit court is affirmed. All the judges concur.