# CASES DETERMINED

IN

# ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS.

OCTOBER TERM, 1889.

NELSON COLE *et al.*, Appellants, v. FREDERICK SKRAINKA, Respondent.

St. Louis Court of Appeals, October 22, 1889.

1. **Custom, Effect of, in the Construction of Municipal Ordinances for Public Improvements.** An ordinance for street improvements, which calls for " a pavement of granite blocks, eight inches deep," can be construed in the light of a custom prevailing at the time of its adoption and defining the dimensions of the granite blocks used, as not less than seven nor more than eight inches deep, and in such case a contract made under such ordinance, and calling for granite blocks of the dimensions so defined by custom, is not invalid.

2. ————. Such custom is not unreasonable, if it be impracticable to construct the pavement called for by the ordinance with granite blocks all exactly eight inches deep, and the provisions of the ordinance be substantially complied with by a pavement in conformity with such contract.

3. ————. A usage of trade, defining the meaning of a term or expression, need not be ancient; it is sufficient, if it has existed for such time as to establish an intention, on the part of the contracting parties, to use the expression in the sense thus defined.

(427)

Cole v. Skrainka.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED, (*certified to the supreme court\**).

*A. R. Taylor*, for the appellants.

*David Goldsmith*, for the respondent.

ROMBAUER, P. J., delivered the opinion of the court.

This is a proceeding in equity seeking to cancel a special tax bill, issued by the city of St. Louis, to the defendant contractor *in full payment* of the work done and materials furnished by him in reconstructing a street upon which plaintiffs' property abuts. The tax bill under the charter is a *prima facie* lien on the property. The contract under which the work was done included the taking up and removing of the old pavement, the preparing with concrete and hydraulic cement of the roadway, the renewing and re-adjusting of the curbing, and the paving of the roadway with granite blocks laid on a concrete base. The *sole claim for relief* by the plaintiffs is based on the ground that the contract was illegal for non-conformity with the ordinance, and that the special tax bill issued by the city for the work is a cloud upon plaintiffs' title. Upon a trial of the cause the court dismissed plaintiffs' bill on the ground, that there was no substantial variance between the ordinance authorizing the work and the contract, nor any substantial variance between the requirements of the contract and its performance.

We may state at the outset, that no claim is made in the petition of any other variance between the ordinance and contract, than the one relating to that part of the work which refers to the depth of the granite blocks. The trial court, as above indicated, heard evidence on both propositions, namely, whether there was a fatal variance between the contract and the ordinance, and

*By Judge THOMPSON, who dissents.

whether the work was done in substantial compliance with the contract. There was no pretense that the material used, general scope of the work, and manner of its execution, were different from those prescribed by the ordinance and contract; hence any variation to the owner's prejudice, between the requirements of the contract and its execution, was wholly foreign to the issues in the case. If any such existed, the owners' remedy at law by recoupment was complete. *Creamer v. Bates*, 49 Mo. 523. Not even on the widest conception of his rights in equity could the owner seek a cancellation of this tax bill, 'if the work was authorized by ordinance and contract, on the sole ground, that variations existed between the contract and its execution, which, while not changing the material or general scope of the work, rendered its performance less valuable to him. We may add in this connection that the court in *Creamer.v. Bates*, *supra*, cites the case of *Marsh v. Richards*, 29 Mo. 99, which was the case of a common building contract, and the court in the case of *Yeats v. Ballentine*, 56 Mo. 537, which was the case of a common building contract, cites the case of *Creamer v. Bates*, recognizing no substantial distinction between the contracts of this class and other building contracts, as far as the question is one affecting the owner's remedy. All evidence therefore, which goes only to a variation between the contract and its performance, may be at once laid out of view as foreign to the case.

The substantial question presented is this: The ordinance provides that, on the concrete foundation, there shall be placed a pavement of granite blocks eight inches deep, set on edge. The contract provides in its specifications, "The blocks shall not be less than eight inches, nor more than twelve inches long, not less than three inches, nor more than four and a half inches wide, *nor less than seven inches, nor more than eight inches deep*, and dressed so as to approximate closely a rectangular form with opposite faces closely approximating equal areas." The fatal variance between the

contract and ordinance is supposed to arise in the clause placed in italics.

The entire evidence concedes that a pavement of granite blocks eight inches deep, whether the words, eight inches, refer to the blocks or to the pavement as a whole, cannot mean that each block must be of the exact depth of eight inches, nor that the pavement, as a whole, must be of that exact uniform depth. Such a requirement would make a pavement of that character so costly as to become wholly impracticable. It would, as the uncontradicted evidence shows, more than treble the expense. If the term does not mean exact eight inches, it must mean something else, and what that something else is, is a question of fact to be determined upon the evidence. For the purpose of determining the meaning of the term, the plaintiffs introduced no evidence whatever. The defendant introduced the following evidence: Paving with granite blocks is of comparatively recent date in the city of St. Louis. Such pavements were not generally adopted until about ten years ago, and were originally made with six-inch granite blocks, which subsequently were changed to eight-inch blocks, as affording a firmer pavement. According to the defendant's witnesses (whose evidence is wholly uncontradicted) the term eight-inch block was known and treated by all parties bidding, as well as by the board of public improvements, to mean a block of between seven and eight inches deep, so that the term had acquired, between the parties employing it, a trade meaning prior to the execution of the contract in controversy. The ordinances never specify the work to be done except in a general way; the details of it are shown by specifications in the street commissioner's office, and all bids are made subject to such specifications. The specifications for inspection in this case were identical with the specifications embodied in the contract.

It will be thus seen that, in no view of the case, could there be any question, under the evidence, of fraud or want of consideration, even if such questions could be considered under pleadings which do not raise them. The contractor's bid offered in evidence by plaintiffs refers to letting number 1669, in accordance with the printed form of contract and specifications for said work. The printed form of contract and specifications is conceded to be the contract and specifications under which the work was done. There was no secrecy in the matter, and the meaning of the term, eight inches, could be misunderstood by no one, since the specifications as above seen described the dimensions of the blocks to be used, in detail.

The appellants' counsel argues that the meaning of the term, eight inches, could not be varied by trade usage, or an agreement between the contracting parties. That argument loses sight of the fact that the term in its very nature could not mean eight inches exact, and that the meaning of the term had to be defined by outside evidence of trade usage. Counsel further argues that usage could not fix the meaning of the term, as meaning between seven and eight inches, because such usage would not be reasonable, and was not shown to be sufficiently long continued to create a custom. Whether the usage was reasonable, depends on the fact, as to whether a block between seven and eight inches deep is of substantially the same service in constructing a good pavement as one of a greater depth than eight inches. The testimony on that subject is uncontradicted, and is to the effect that it is of substantially the same service. The experts called by defendant, several of whom are wholly disinterested scientific men, testify that one of the main aims to be attained in the construction of these pavements is to secure a uniformity of upper surface. The depth of the excavation and concrete foundation are prescribed by the ordinance, and it is essential to a good

pavement that the latter should have a uniform level. It is equally important that each block should have a proper sand cushioning, so as to prevent it from coming into direct contact with the concrete, which, in case the blocks are of greater depth than eight inches, might become unavoidable. These experts further testify that pavements do not wear uniformly down from the surface, but, after being worn down a certain depth, become shaky and cobbled and unfit for further use, and that, in their opinion, the specifications in the contract are a substantial compliance with the terms of the ordinance, and are designed to secure the pavement, provided for by the ordinance, and one substantially as good as if the blocks were of slightly greater depth.

In regard to the objection, that the usage was not sufficiently long continued to create a custom, it might be observed that the evidence tends to show that the usage is as old as the adoption of the eight-inch block pavement, and no usage can be older than the thing to which it refers. This is not a question of custom by which third parties are sought to be charged, but the question of the meaning of a term employed by the contracting parties. If the meaning of the term was well understood between the contracting parties, it is immaterial whether such usage was one day or one thousand years old. Nor is there anything in the law, or in the subject-matter of the contract, which prevents the meaning of the terms employed from being governed by usage. In *Soutier v. Kellerman*, 18 Mo. 509, a usage of trade, that a thousand shingles meant a bundle of a certain dimension, containing less than six hundred and twenty-five, was held to be reasonable and binding.

The board of public improvements of the city of St. Louis are the agents of the city in regard to all street improvements. All ordinances for such purpose must emanate from the board. R. S. 1879, p. 1608, secs. 14, 15 and 16. The assembly has no power to contract,

either directly or indirectly for any public work. *Ib.*, p. 1610, sec. 27. The ordinances are all framed by the board, and so was the ordinance in question. It is an initial and necessary step of the contract, and the same rules apply in its interpretation, as apply in the interpretation of every other instrument. When the ordinance uses the words, eight inches, it means substantially eight inches, regard being had to the purpose for which the blocks are used. The meaning of that term is defined by the specifications, subject to which the contractor bids, as a block between seven and eight inches deep. The meaning of the term is well known to the contractor and all other bidders, and well known to the board, which employed it, in drafting the ordinance, in the sense given to it by common usage and in the sense in which they have always employed the term. The block thus provided for is the proper block for constructing the entire pavement according to its scope and design. We cannot see how, under these circumstances, there can be any reasonable doubt that the contract is a substantial compliance with the ordinance, in view of the proposition that equity deals with the substance of things and not with their form.

If the contract is void under the charter, and thus wholly illegal, it furnishes no basis of recovery in any form of action. *Keating v. City of Kansas*, 84 Mo. 419. There is no difference in principle between contracts of municipal corporations, and contracts of individuals in that regard, further, than that in the former a grant of power must be shown, and, in the latter, the power is presumed and the restraint must be shown. That the city had power to pass the ordinance is conceded. If it made a contract in substantial conformity with the ordinance, the contractor cannot lose the benefit of his work owing to unsubstantial variations between the ordinance and contract, or the contract and its execution. *Neenan v. Smith*, 60 Mo. 292; *Sheehan*

*v. Owen*, 82 Mo. 458; *Eyermann v. Provenchere*, 15 Mo. App. 256; *Leominster v. Conant*, 139 Mass. 384.

With the concurrence of Judge BIGGS, the judgment is affirmed. Judge THOMPSON, who dissents, is of opinion that the decision rendered is contrary to previous decisions of the supreme court and Kansas City court of appeals. It is therefore ordered that the case be certified to the supreme court for final determination.

### DISSENTING OPINION.

THOMPSON, J.—This is a suit in equity to cancel a special tax bill issued by the city of St. Louis to the defendant, under a contract for reconstructing with granite pavement a street against which the plaintiffs' property abutted. By the charter and ordinances of the city, applicable to the subject of this special tax bill, it is made a lien against the property in respect of which it is issued. The plaintiffs predicate their right to the relief claimed on the ground that the tax bill is invalid for the reason that the ordinance authorizing the reconstruction of the street provided that the pavement should consist "of granite blocks eight inches deep, set on edge," etc., and that the board of public improvements, in violation of the terms of this ordinance, entered into a contract with the defendant for the reconstruction of the street, which contract specified that the pavement should be but seven inches deep. The defendant admitted the passage of the ordinance, the letting of the contract to him, the doing of the work thereunder, the issuing of the tax bill to him therefor, as recited in the petition, and that it is a lien and charge on the plaintiffs' real estate therein described. The answer denies the other allegations of the petition, and avers that "said contract was in every material respect in accordance and compliance with said ordinance, and that it was not in any respect inconsistent

with said ordinance." It then sets up certain matter apparently by way of estoppel, though it is not distinctly averred to be such, which will be hereafter considered.

On the hearing it appeared conclusively that the ordinance pursued the language above quoted, requiring the pavement to be laid with granite blocks "*eight inches deep*, set on edge," etc., and that the contract, which purported to have been executed between the board of public improvements, on behalf of the city, and the defendant, in pursuance of this ordinance, and under which the work was done by the defendant, did not require the pavement to be eight inches deep, but recited that it should be "*not less than seven inches nor more than eight inches deep*." Several gentlemen (members of the board of public improvements and contractors of public work) testified to the effect that a pavement, "not less than seven nor more than eight inches deep," was as good and durable as a pavement eight inches deep. Against the objection of the plaintiff, evidence was given to the effect that, for *two years or more*, a *custom* had existed, between the board of public improvements and contractors of public work, of carrying out ordinances drawn in terms like the ordinance involved in this case, by contracts with specifications such as those in the contract in this case. There was also evidence on which the defendant predicates an *estoppel*, which will be separately spoken of hereafter. The circuit court, on consideration of this evidence, dismissed the petition, and the plaintiff appeals to this court.

Three questions arise on this record : *First*. Was there a variance between the ordinance and the contract of such a material or substantial character as to render the contract void ? *Second*. If so, are the plaintiffs entitled to the remedy here sought? *Third*. If they are otherwise entitled to the remedy, have they estopped themselves by their conduct from claiming it?

I. It is a well-settled principle that authority to charge private property with the cost of municipal improvements is confined within the limits prescribed by the charter and ordinances passed in conformity therewith; that proceedings to this end are *in invitum*, purely statutory, and, therefore, to be strictly pursued. It has been said by the supreme court that "to enunciate any other rule than this would be to gravely announce the doctrine that, while the municipal law would be binding on the citizen, the representatives of the city could, at pleasure, disregard such law." *Leach v. Cargill*, 60 Mo. 316; reaffirmed in *City of Kansas v. Swope*, 79 Mo. 446. The same court has also said: "The ability of the city to create a lien on the property of one of its citizens, in the manner pointed out in the ordinance referred to, is founded not on any absolute or pre-existent right, but rests exclusively in an adherence to the method prescribed by ordinance in pursuance of the authority contained in the charter." *Kiley v. Oppenheimer*, 55 Mo. 374. These principles are a part of the elementary learning in the law of municipal corporations, and are not questioned by the counsel for the defendant in this case.

Another principle equally undoubted is that every contractor with a municipal corporation for the doing of public work is bound to take notice, not only of the terms of the ordinance under which the contract is made, but also of the terms of the charter under which the ordinance has been passed. He is bound to see not only that his contract complies substantially with the ordinance, ( *Galbreath v. Newton*, 30 Mo. App. 393), but he is bound to go further and see that the ordinance is authorized by the charter. *Cheeney v. Brookfield*, 60 Mo. 53. If, for either of these reasons, his contract is void, he can neither enforce the special tax bill issued to him thereunder against the property against which the bills are issued, nor can he recover of the city for

the doing of the work; for, as was said by our supreme court in considering this question, "from a void contract no cause of action can arise, whether on a *quantum meruit* or one sounding in damages." *Keating v. City of Kansas*, 84 Mo. 415, 419. See, also, *Galbreath v. Newton*, 30 Mo. App. 399.

But the principle that the courts will require the agents of municipal corporations, in making and in executing contracts for public work, the price of which is to become a charge upon the property of private persons, to pursue their powers strictly is not carried to unreasonable or impracticable limits. Our supreme court has announced the principle that mere irregularities, where the ordinances have been substantially complied with by the city authorities, and nothing done or omitted which could possibly have affected injuriously the interests of the property-owners chargeable with the costs of the work, will not deprive the contractor of his right to enforce the lien of his special tax bill against their property. That court has added : "We are not inclined to turn a plaintiff out of court, who has given his time and expended his money in the improvement of their property, on mere technicalities, which, in no manner, affect the substantial rights or interests of the parties." *Sheehan v. Owen*, 82 Mo. 458, 465. In like manner it has been said by this court : "Here, as elsewhere, courts of justice must take practical views of things. Public improvements must go on; and if the courts of justice, in their anxiety to protect property-owners from a reckless or oppressive exercise of this power, hamper its exercise with unreasonable or impracticable rules, it will result that municipal corporations will not be able to let out contracts for such improvements at a cost which fairly represents their value, and that none will bid for such contracts, except at prices at which they can afford to assume the speculative chances of unfriendly litigation." *Kemper v.*

*King*, 11 Mo. App. 116, 129. These principles have been recognized by the supreme court and by this court in other cases. *First National Bank v. Arnoldia*, 63 Mo. 229; *Eyermann v. Provenchere*, 15 Mo. App. 256; *Creamer v. McCune*, 7 Mo. App. 91. I have no disposition in the present case to detract from their value or to restrict their application.

But I am of opinion that they do not extend so far as to sanction the palpable disregard of the terms of the ordinance which was made in drawing the contracts in question in the present case. Upon the face of the two instruments there is no room for doubt in reference to this question. An ordinance which requires a pavement to be laid eight inches deep is not complied with by a contract which permits it to be laid from seven to eight inches deep. The true meaning of the ordinance is that the pavement shall not be less than eight inches deep; the true meaning of the contract is that it need not be more than seven inches deep. The contract thus permits a variation of an inch from the depth prescribed by the ordinance, which variation is in no respect in favor of the city or the property-owners who must pay the cost, but entirely in favor of the contractor. Much evidence was introduced on behalf of the defendant, intended to show that this variance between the contract and the ordinance was immaterial; and, as already stated, several gentlemen, contractors and members of the board of public improvements, testified that a pavement such as the contract permitted was just as good and durable as a pavement such as the ordinance required; and the learned judge of the circuit court, in a written opinion, has so found. This is a case in equity, in which we rehear the cause as chancellors upon the same evidence upon which it was heard in the circuit court, and in which we are not bound by the conclusions of fact arrived at by the circuit court. It is idle for witnesses, however numerous

or expert, to come forward and tell me that a pavement less than eight inches thick is as good as a pavement eight inches thick. A pavement wears from its surface downward. If, with a given traffic, a pavement of such stones, as this consisted of, will wear away to the extent of one inch in five years, it is demonstrably certain that under such a traffic a pavement of this kind seven inches deep has five years less to live than a pavement of the same kind eight inches deep. Mathematical conclusions and physical facts of universal knowledge and recognition cannot be overturned by the testimony of any number of witnesses, however expert or however worthy of general belief.

The evidence, indeed, shows that granite blocks could not be made *precisely* eight inches in depth, except at an expense so great that it is not to be presumed to have been contemplated by the ordinance. In the light of this evidence, I have no doubt that it is a proper interpretation of the ordinance that it is satisfied by a pavement, regular in its surface and character, having an *average depth* of eight inches, and that slight variations in performing a contract drawn conformably to it, either above or below this average depth, ought not to vitiate the tax bill, and thus deprive the contractor of his compensation. But the case with which we are dealing does not specially concern the manner in which this contract has been *performed;* it concerns the manner in which the contract has been *made.* The ordinance requires a depth of eight inches. The contract is complied with by a depth of seven inches.

The circumstance that ordinances for street improvements originate in the board of public improvements is one which does not seem to me to be relevant at all. In drafting those ordinances the board of public improvements performs a merely clerical of bureaucratic function, and the fact that it is invested with

that function does not constitute it a judicial tribunal to interpret the ordinances when passed, and to make them mean something different from what they say. The ordinance when passed is the act of the legislative body of the city, and it necessarily prescribes the terms of the contract and the manner in which the work shall be executed, so far as it speaks upon that question.

Nor does the argument which supposes that bidders adjust their bids to the contract and presumably bid less for work of the dimensions of the contract than for work of the dimensions of the ordinance, whereby no one is harmed by the deviation, impress me with any force. I have already shown that it is the settled law of this state that bidders for such public work must look beyond the contract and take notice of the ordinance. An intending bidder, so acting, would at once discover this discrepancy between the ordinance and the contract. Certainly the discrepancy is sufficient to suggest to the mind of a prudent man, acting under proper legal advice, the possibility of the contract being held invalid, or at least the possibility of its inviting litigation. This would have the probable effect of deterring bidders, and preventing the contract from being let except at rates so high that bidders could afford to take the speculative chances of litigation.

Moreover, so much of the argument as assumes that the bidders adjust their bids to the terms of the contract in disregard of the terms of the ordinance,— that is to say, that they bid upon the conception that seven inches and not eight inches is the standard of the pavement,—proves too much; for such an argument would equally help out the contract if it prescribed four inches as the depth of the pavement, instead of eight inches, as required by the ordinance.

The main question, then, must come back to this: Whether there is a substantial difference between a pavement eight inches in depth and one seven inches in

depth.   A strict compliance with the spirit of the ordinance would reject every block, not substantially rectilinear and rectangular, and which would pass through a ring eight inches in diameter.   But conceding that a reasonable interpretation of it would sanction a contract providing for what one of the defendant's witnesses calls a "play" in dressing the stone, I could understand why the contract might prescribe a stone which would produce a pavement having the average depth of eight inches, by specifying that no stone should be more than eight and a half inches or less than seven and a half inches in depth.   But here it cannot escape attention that the so-called "play" is all into the hands of the contractor.   The contract sanctions a variation from the terms of the ordinance in the direction of reducing the depth of the pavement, and actually prohibits any variation in the other direction.   This has been done for no better reason, so far as I can gather from the record, than that the contractors and officials letting contracts have taken it into their heads to conclude that a seven-inch pavement is as good as an eight-inch pavement.

In the re-examination of a portion of the pavement in controversy (of which I shall speak hereafter), the evidence shows that twenty-nine stones were taken up.   Of these, according to the testimony of a witness for the plaintiff, eight were *under* seven inches in depth, but according to the testimony adduced by the defendant but two of them were less than seven inches.   The evidence, however, shows that a small portion only of the stones reached the depth of eight inches.   In fact, the plaintiff's evidence is to the effect that the variation is from six to eight inches, and the defendant's evidence shows that the contractors regarded seven inches as the substantial standard.   The whole evidence satisfies me that the ordinance has been carried out in accordance with the spirit which dictated the departure

in making the contracts under it. The legislature of
the city has passed an ordinance calling for an eight-
inch pavement, and providing that the cost of it be
charged upon adjacent property under the terms of the
charter.     Under the contract as made and executed, the
city has a seven-inch pavement, and it is proposed to
enforce the payment for this pavement against adjacent
property on the theory that it is substantially the pave-
ment authorized by the ordinance.

The case of *Eyermann v. Provenchere*, 15 Mo.
App. 256, is cited to us in support of the theory of the
defendant.     In that case, after the plan of the work had
been made in the office of the sewer commissioner, an
ordinance providing for the doing of the work was
drawn up in the office of the president of the board of
public improvements before being submitted to the
municipal assembly, and, by a mere clerical error in draw-
ing it, a branch sewer provided for in it was located in
block 2050 and not in block 2051, as required by the
plan in the office of the sewer commissioner.     The ordi-
nance was passed in this form; but apparently with
the honest purpose of correcting this clerical mispris-
ion, the contract was left so as to require the making
of the branch sewer in block 2050, in accordance with
the original plan, and it was so done by the contractor.
On a tax bill issued to him for the work he brought an
action in the circuit court, and failed, for the reason that
the contract did not comply with the ordinance.     There-
after, under a further direction from the board of pub-
lic improvements, he executed the work in accordance
with the ordinance, by constructing another branch
sewer in block 2051.     Thus, he did all that the ordinance
required of him, and more; he constructed, in conse-
quence of this clerical misprision, a sewer which the
ordinance did not require of him, for which he re-
ceived no compensation.     We held that the fact that
the work as originally done deviated from the ordinance

did not prevent him from having compensation from the property-owners, chargeable with the cost of the work, for the work, after it had been done in compliance with the terms of the ordinance. That case does not help the defendant in this case; for here there is no pretense that the work was done in compliance with the terms of the ordinance, except in so far as the contract complies with it,—in other words, that a pavement was laid of an average thickness of eight inches, but the evidence indisputably shows the contrary.

II. Against the objection of the plaintiffs, the defendant gave evidence tending to show, that, at the date of the adoption of the ordinance under which the work was done, *the uniform practice and custom* prevailed, and had prevailed for *two years or more*, of carrying out ordinances like the one involved in this case by contracts containing the specifications in regard to the depth of the granite blocks which this contract contained; and that, under this custom, an eight-inch granite block, or a granite block eight inches deep, had become a business or technical term, and was understood by all contractors and quarrymen, as well as by the city officials and agents, to mean a block not less than seven nor more than eight inches deep. It is contended that the custom established by this evidence is to be looked to in the interpretation of the ordinance, in pursuance of the principle that where a law has received a practical or contemporaneous construction long acquiesced in, this construction will generally be allowed to prevail, and in accordance with the further principle that departmental practice under a statute will be looked to in arriving at its meaning. *United States v. Gilmore*, 8 Wall. (U. S.) 330; Endlich on Statutes, sec. 360.

So far as the evidence of the so-called custom is concerned, it may justly be observed that a custom on

the part of those charged with the execution of the law to violate it is a bad custom, which will not be judicially recognized or enforced. The rule that a practical interpretation of a statute long acquiesced in will not be disturbed except for cogent reasons, and the corresponding rule that departmental practice will be looked to in determining the interpretation of a statute in doubtful cases, rest upon somewhat different grounds. An interpretation thus established, if it is contrary to the plain terms of the statute, will be allowed to stand only where it has been *long acquiesced in*, and where great public injury would flow from judicially establishing the correct interpretation. The maxim, *communis error facit jus*, is never applied where an erroneous interpretation of a statute, injurious to the public interests or to private rights, has sprung up within a recent period. In one case, Lord ELDON laid it down that in the case of a breach of a charitable trust, if the enjoyment of the property had been clearly a continued breach of the trust for two centuries, it would be just and right to disturb it. *Attorney General v. Bristol*, 2 Jac. & W. 321. While the decisions do not in general go to this length, yet the instances where unbroken usage has been allowed to establish the interpretation of a statute have been where the practical interpretation has stood for five hundred years (*Mansell v. The Queen*, 8 El. & B. 54, 72, 111); two hundred years (*Gorham v. Exeter*, 15 Q. B. 52, 69); one hundred years (*Packard v. Richardson*, 17 Mass. 131, 143); fifty years (*Lord Fermoy's Case*, 5 H. L. C. 729, 785); forty years (*Reg. v. Cutbush*, L. R. 2. Q. B. 373); or even thirty years. *Pease v. Peck*, 18 How. (U. S.) 595; *United States v. Recorder*, 1 Blatchf. (U. S.) 218, 223; *Clark v. Dotter* 54 Pa. St. 215. A recent author of a work of great learning and excellence, to whom I am indebted for these citations, adds: "It may, in general, be said, that the force of contemporaneous exposition, or the exposition involved in professional usage, is most properly

confined to old statutes; whereas a recent statute, when brought into controversy, is to be construed according to its terms, not according to the views taken of it by the parties in interest." Endlich on Statutes, section 359; citing *Clyde Nav. Trustees v. Laird,* L. R. 8. App. Cas. 673.

It has been well reasoned that a custom at variance with the plain meaning of a statute cannot be sustained as a construction of it. On this ground an acceptance given by the secretary of war to contractors, upon whose contract no payment was due, was held void. Whether as an advance upon the contract or as a loan of the public credit, both of which were prohibited by an act of congress, notwithstanding such a usage had sprung up in the department of war. *Pierce v. United States,* 1 Ct. Cl. 270. So it has been held that, where the compensation of a public officer is fixed by a statute, he cannot recover additional compensation for expenses incurred by him in the performance of his official duties, although by a usage, long antedating the statute, such incidental expenses may have been paid without objection. *Albright v. Bedford County,* 106 Pa. St. 582. So, the chancery court of New Jersey has lately held that a practice on the part of the clerk of that court, pursued for many years, of taxing costs illegally in a given particular, could not be appealed to as establishing the legality of the practice. The court reasoned that an exposition of a statute contrary to its plain meaning, placed upon it by contemporaneous construction, is not acceded to by the courts "except under the pressure of a supreme necessity, as where valuable rights, resulting from the erroneous construction, must be destroyed or seriously impaired if it be not done. *Communis error facit jus* is a recognized maxim of the law, but it is seldom applied in the administration of justice, and never without the exercise of the utmost caution." *Booraem v. North Hudson County Railroad,* 44 N. J. Eq. 70, 77. So, it has been held that

local custom at variance with a general statute cannot control the statute, even for that locality,—such as a custom of departing from the standard of weights and measures, fixed by a statute which is obligatory in its terms and character. *Noble v. Durell*, 3 T. R. 271. In like manner, it has been recently held that a statute making two thousand pounds a ton cannot be controlled by a custom of trade making twenty-two hundred and forty pounds a ton. *Godcharles v. Wigeman*, 113 Pa. St. 431. On the same principle I hold that a municipal ordinance, requiring a pavement to be eight inches in depth, cannot be set aside by a custom between the contracting officers of the city and the contractors, of two years' duration, to violate its terms by laying down pavements from seven to eight inches in depth. Under the charter of the city, of which we take judicial notice, it appears that it takes *four years* for the inhabitants of the city to change the legislative body of the city. If a custom in derogation of the rights of the people can spring up between a municipal board of the city and the contractors for the doing of public work such as shall have the force of law, in *half this time*, then the rights of the people are at the mercy of a municipal board, but one of whom is elected by the people and the contractors. Nor can this contract be supported under the theory of a custom of trade; for the only custom of trade which is shown is a custom which has sprung up, between the city officials and the contractors, in contravention of the terms of city ordinances, existing at the time and governing the conduct of the parties; and the letting and taking of public contracts is not a "trade."

III. Counsel for the defendant does not question the propriety of the relief sought for by the plaintiff, provided the contract is in fact void. I advert to the question for the purpose of showing that I have regarded it as too important to pass without observation. The usual case where a court of equity will lend

its aid to remove a cloud from the title of an owner of land is where a deed, mortgage or other instrument exists of record, creating a defect in, or an encumbrance upon, the title of the complainant, which instrument is valid on its face, but invalid by reason of some fact which can only be established by extrinsic evidence. *Clark v. Insurance Co.*, 52 Mo. 272, 276; *Mason v. Black*, 87 Mo. 329, 344; *Beedle v. Mead*, 81 Mo. 297, 303. A special tax bill, such as the one under consideration, is conceded to be, under the charter of the city of St. Louis, a lien upon the land therein described if valid. Under the provisions of the charter, of which we take judicial notice, it remains of record in the office of the comptroller, and is there subject to inspection by intending purchasers or mortgagees. If it is valid on its face such persons will ordinarily conclude that the municipal authorities have complied with the law in the steps which have led up to the issuing of the tax bill, and they will hence not inquire to see whether the contract authorizing the work to be done was drawn in compliance with the ordinance. The books show that cases, where the invalidity of the instrument, which affects the title of the complainant, can only be shown by *parol evidence,* are stronger cases for the invocation of equitable relief than cases where the infirmity of the instrument is capable of being shown by other writings. But the rule is not confined to cases where the infirmity of the instrument can only be shown by parol evidence. It extends generally to cases where the instrument is *prima facie* valid, but void by reason of facts, which can only be shown by extrinsic evidence. That a municipal tax bill founded on a void contract is such an instrument, I have no doubt, especially in view of recent decisions in this state, tending to enlarge the scope of preventive remedies in such cases. *Beedle v. Mead, supra; Parks v. People's Bank*, 31 Mo. App. 12; affirmed in supreme court, opinion not yet reported.

IV.   The remaining   question   is   whether the plaintiff has, by his conduct, *estopped* himself from the right to the relief which he here seeks.   The argument in favor of an estoppel is predicated on the following state of facts, set up in the answer and shown by the evidence:   The charter of the city (art. 6, section 28) provides that, on complaint by any citizen and tax-payer, that any public work is being done contrary to contract, or that the work or material used therein is imperfect, the board of public improvements shall examine into the complaint, and may appoint commis-sioners to examine and report on the work, and, after such examination or report, shall make such order as shall be just and reasonable, and that such decision shall be binding on all the parties.   The revised ordi-nances of the city (page 749, section 16) further require that every contract shall contain and shall be made subject to an express provision of the same effect.   Such a provision was contained in the contract under which the work in question was done.   While the work was in progress, the plaintiffs and other property-owners availed themselves of these provisions, and made a complaint before the board of public improvements that the work was not being done *according to the contract*, and that the work and the materials furnished were imper-fect.   A committee was appointed by the board to examine into the complaint.   It examined the parts of the work complained of, in the presence of the plaintiff Cole, of his attorney, and of the other complainants.   In the course of this examination the committee required the defendant to tear up a part of the work.   The committee found all the work and materials to be "*in compliance with the contract*, except two granite blocks which were slightly less than the required depth." They made a report to the board of public improve-ments to the effect that the contract had been substan-tially complied with, and that the slight deficiency in

the depth of the granite blocks, which had been observed, did not materially diminish the value of the pavement. The defendant replaced the two granite blocks which were deficient in depth, and he was required to, and did, replace the pavement which had been torn up in the course of his examination. Upon this predicate of fact the contention of the defendant now is that, by availing themselves of their right to complain of the work *as being done contrary to the contract*, and of the work and materials as being different from what the contract required, the plaintiffs recognized the contract as subsisting and enforceable; and that, the defendant having, in consequence thereof, been put to trouble and expense, they cannot now be heard to deny the validity of the contract. I can see no element of an estoppel in these facts. I cannot understand upon what principle the fact, that these complainants insisted that the work should not be *worse than the contract*, estops them from showing that the contract is *worse than the ordinance*. The doctrine of estoppel cannot be invoked, unless what was said or done by the party to be estopped is shown to have influenced the conduct of the other. *Eitelgeorge v. Building Association*, 69 Mo. 52; *Spurlock v. Sproule*, 72 Mo. 503; *Acton v. Dooley*, 74 Mo. 63; *Rogers v. Marsh*, 73 Mo. 64. According to an approved writer, "the following elements must be presented in order to an estoppel by conduct: *First.* There must have been a misrepresentation or concealment of material facts. *Second.* The representation must have been made with knowledge of the facts. *Third.* The party to whom it was made must have been ignorant of the truth of the matter. *Fourth.* It must have been made with the intention that the other party should act upon it. *Fifth.* The other party must have been induced to act upon it." Bigelow on Estoppel, 43ʾ. This definition was approved by our supreme court in *Acton v. Dooley*, 74 Mo. at page 67. None of

these elements of estoppel existed under the evidence in this case. The complainants challenged the character of the work before the board of public improvements, in compliance with the charter and ordinances, as not being sufficient under the contract; but they made no representation, expressly or by implication from their conduct, that they would not challenge in the judicial courts any tax bill which might be issued to the contractor, on the ground that the contract under which the work was done was not in compliance with the ordinance. There is nothing whatever in the evidence tending to show that the defendant was induced to believe, by the conduct of the complainants in challenging before the board of public improvements the manner in which he was executing the contract, that they would not challenge the sufficiency of the contract itself in the judicial courts. If the contractor had been in doubt as to the goodness of the contract, and the complainants had encouraged him to go on with his work, then an estoppel might have arisen, on a principle analogous to the maxim, *volenti non fit injuria.*

Contractors have, under various pretexts, attempted to evade the rule which requires them to know at their peril that the municipal officers with whom they make the contract have power to execute it on the part of the municipality. In *Leech v. Cargill,* 60 Mo. 316, an attempt was made to escape the operation of the rule on the ground that the ordinance was merely *directory;* but the supreme court quickly disposed of that contention. In later cases they have attempted to escape it on this doctrine of estoppel. Such an attempt was made in *Perkinson v. McGrath,* 9 Mo. App. 26. In that case, the ground on which an estoppel was claimed was that the tax-payer wrote to the city engineer, demanding of him that the contractor should perform his contract, claiming that the work was not satisfactorily done, and asserting that, if it was not done in

accordance with the contract, he would not pay for it. It was held that this did not estop the tax-payer from showing, as a defense in an action on the tax bill, that the ordinance under which it ‘was issued was void. BAKEWELL, J., in giving the opinion of the court, said: "It is the duty of the contractor to see that he has a valid contract, otherwise he takes the work at his own risk. The owner of the property is under no obligation to examine whether all the formalities of law have been complied with in letting out the work; and where he saw a man making improvements, or what are called improvements, on his land, without his direction or consent, under color of a valid contract with the city, which has power to make such a contract and to direct the work to be done, he had undoubtedly the right to suggest to the city authorities that the work should be done according to the terms which the city had assumed to impose upon the contractor. In the absence of evidence that the property-holder had actual notice of the invalidity of the contract, under which the work was being done, there is nothing in the fact, that he insists upon the work being done according to the letter of the contract, that tends to show fraud. This may be looked upon as an attempt on his part to make the best of a bad business, but is certainly no declaration that he waives all defenses to an action on the special tax bill, or that he accepts or will pay for the work."

This question was considered at length by the Kansas City court of appeals in the late case of *Galbreath v. Newton*, 30 Mo. App. 394, which was an action on a special tax bill, wherein an estoppel was claimed on the ground that the defendant, together with other property-owners affected by the intended improvements, had *induced* the officers, charged with the making of the contract, and the contractor so to frame the contract as to deviate from the terms of the ordinance, by substituting flint bowlders for limestone as the material to be

used in making the pavement. The court seems to have been of opinion that this estoppel had not been established by the evidence; but, in giving directions to govern a future trial, expressed the opinion that, if established, it would avoid the defense that the contract did not comply with the ordinance. The court further expressed the opinion that the defendant would be estopped, if it could be shown, "that, though taking no part in the change of the contract himself, he had actual knowledge of the change or substitution having been procured by others, and knowingly acquiesced in the work done thereunder." I am not prepared to go so far as to hold with this *dictum* that the mere fact that the property-owner may have knowledge of a fact which renders the contract invalid, and, nevertheless, "acquiesces" in the doing of the work—which I understand to mean fails to object to the doing of it,— will estop him from setting up the invalidity of the contract in a future judicial proceeding. He is no party to the contract. He is no actor in respect of it unless he voluntarily makes himself such. He is not bound, by any rule of law with which I am acquainted, to object. He is not bound to disclose to the contractor the fact which renders the contract invalid when the law requires the contractor to know it at his own peril. The silence of the property-owner cannot be said to mislead the contractor into supposing that the contract is valid, because it is his contract and not the owner's, and the law requires him to know whether it is valid or not. I apprehend that an estoppel can only arise where the property-owner takes some *affirmative action*, which fairly leads the contractor to believe that the property-owner waives his right to object to the validity of the contract, upon the faith of which the contractor goes forward with the work and changes his position to his detriment.

I think that the decision of my associates in this case is contrary to the ruling of the supreme court in

*Kiley v. Oppenheimer*, 55 Mo. 374; and to the decision of the Kansas City court of appeals in *Galbreath v. Newton*, 30 Mo. App. 384, 399; and that the case should be certified to the supreme court in conformity with the constitutional mandate.