BEEDLE et al., Appellants, v. MEAD et al.

1. **Equity**: SHERIFF'S SALE: ANNULLING DEED. A deputy clerk of the court in which a judgment for costs was rendered, of his own motion, and improperly, issued an execution thereon and agreed with the deputy recorder of the county to buy in the land levied on under the execution, and the two, in pursuance of said agreement, purchased at the sheriff's sale 240 acres of land, worth $2,400, at less than seven cents an acre, when two acres would have more than satisfied the execution, and received the sheriff's deed therefor; *Held*, equity will interfere and set aside said deed.

2. **Cloud on Title**: EQUITY : EJECTMENT. One out of possession, and whose land is sold under execution, the record under which the purchaser, at the sheriff's sale, claims, not disclosing on its face the infirmity of such purchaser's title, and recourse being necessary to extrinsic evidence to establish such infirmity, has the right to invoke the aid of a court of equity to have the sheriff's deed annulled, as a cloud on his title, and need not resort to ejectment.

3. **Cestui Que Trust**: RIGHT TO PROTECT SECURITY. A beneficiary in a deed of trust who purchases at the sale thereunder, but fails to obtain the legal title to the land, by reason of the absence from the sale of trustees named in the trust deed, still has such a *status* toward the property as to entitle him to come into a court of equity and seek the protection of his security.

4. **Officers of the Court** cannot, *sua sponte*, issue execution for costs. The judgment for costs belongs to the litigant, and he alone controls it. The remedy of officers for their fees is by fee-bill.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

Beedle v. Mead.

*William A. Wood* and *Ramey & Brown* for appellants, cited *Wagner v. Phillips*, 51 Mo. 117; *Mitchell v. Jones*, 50 Mo. 438; *Shed v. Railroad Co.*, 67 Mo. 487; 1 Coke on Lit., 39a; R. S. 1879, § 3672; *Taylor v. Runyan*, 3 Clark 474; Freeman on Judg., § 52; *Wheeler v. Scott*, 3 Wis. 362; R. S., §§ 990, 1002, 2335, 5595; *Nesbit v. Neil*, 67 Mo. 275; *Reed v. Austin*, 9 Mo. 713; *Weston v. Clark*, 37 Mo. 568; *Durette v. Briggs*, 47 Mo. 356; *Den v. Morse*, 7 Halst. 337; *Gamble v. St. Louis*, 12 Mo. 618; *Harrington v. Utterback*, 57 Mo. 519; *Clark v. Ins. Co.*, 52 Mo. 272; *Bank v. Evans*, 51 Mo. 335; *Vogler v. Montgomery*, 54 Mo. 577.

*Shanklin, Low & McDougal* with *Frank Sheetz* for respondents.

The petition does not state facts sufficient to constitute a cause of action. There is nothing in the petition showing that plaintiff was in possession at the commencement of the suit, and no facts are stated from which possession can be inferred. *Clark v. Ins. Co.*, 52 Mo. 272; *Keane v. Kyne*, 66 Mo. 216. It is averred in the petition that the execution under which defendants claim, was issued on a mere memorandum on the judgment docket, and that no judgment was ever rendered or entered on the records of the court. If such is the case, the deed to defendants is a nullity, and would cast no cloud upon title, and plaintiff being out of possession, should have resorted to ejectment. *Clark v. Ins. Co.*, 52 Mo. 272. If the petition is sufficient, still plaintiff cannot recover, because, (a) It is shown by the evidence that plaintiff was not in possession at the commencement of the suit, and, (b) There is no reasonable pretense that defendants perpetrated any fraud upon any one, or that the sale was not perfectly fair, open and regular. The deed to plaintiff was defective, because all of the trustees were not present at the sale, and her right to the land depends on the validity of the sale. 1 Perry on Trusts, § 411; *Berger v. Duff*, 4 Johns. Ch. 367; *White v. Watkins*, 23

Mo. 423; Hill on Trustees, p. 305; *Powell v. Tuttle*, 3 Comst. 397; *Smith v. Wildman*, 37 Conn. 384. The plaintiff's case rests solely upon the inadequacy of the price defendants paid for the land, but such inadequacy is not, of itself, a distinct principle of relief in equity. *Hammond v. Scott*, 12 Mo. 9; *Meir v. Zelle*, 31 Mo. 331; *H. & St. J. R. R. Co. v. Brown*, 43 Mo. 294; *Parker v. Railroad Co.*, 44 Mo. 415; *Wagner v. Phillips*, 51 Mo. 117; *McPike v. Aullman*, 53 Mo. 551; *Durfee v. Stewart*, 59 Mo. 491; *Durfee v. Moran*, 57 Mo. 374; *Erwin v. Parham*, 12 How. (U. S.) 197.

PHILIPS, C.—On the 1st day of May, 1877, Jane A. Thompson of Livingston county, Missouri, loaned to Edwin J. Bell the sum of $3,500, and to secure the payment thereof, the said Bell executed to three trustees, a deed of trust on certain real estate in Livingston county, which was duly recorded in said county.

The debt being due and unpaid, according to the terms of said deed of trust, on the 8th day of May, 1879, the trustees advertised said land for sale in a newspaper published at Chillicothe, in Livingston county, and on the 6th day of June, following, said land was sold under the trust deed, and the said Jane Thompson, became the purchaser thereof, at the price of $3,500. It appears from the evidence, that only one of the said trustees was present at, and conducted the sale. The deed was made, however, by all the trustees. It further appears, that prior to the making and recording of said deed of trust, there was a suit pending in the circuit court of Livingston county, wherein said Bell was plaintiff, and one James M. Henry, was defendant. At the January term, 1877, of said court, the following entry was made of record in said cause:

"EDWIN J. BELL,

v.

JAMES M. HENRY,

"Now come the parties hereto and file an agreement to dismiss this suit as follows, viz:

" It is agreed by and between the plaintiff and defendant in this cause, that this suit shall be dismissed, each party paying one-half of the cost.

EDWIN J. BELL,
J. M. HENRY,
J. P. DILL, Agent.

" It is therefore considered and adjudged by the court that plaintiff recover of defendant, James M. Henry, one-half of the costs of this suit, and that he have execution therefor. It is further ordered and adjudged by the court, that defendant, James M. Henry, recover of plaintiff, Edwin J. Bell, one-half of the costs of this suit, and that he have execution therefor."

The defendant, Monroe, was deputy clerk of the said circuit court, and the defendant, Mead, was deputy recorder of deeds in said county. The day after the advertisement of said land for sale, under the deed of trust, the defendant, Monroe, as said deputy clerk, without direction of Henry, in whose favor said judgment for costs against Bell was rendered, and without the direction of his principal, the circuit clerk, made out a bill of costs in said suit, and issued an execution therefor. This execution was for the whole of the costs remaining unsatisfied, as claimed by the deputy clerk. The following is the bill of costs thus made out:

EDWIN J. BELL,

v.

JAMES M. HENRY.

| | | |
|---|---|---:|
| Oct. 12th, 1876. | Clerk James Wright, filing and entering suit.................................................$ | 20 |
| | 2 copies petition and seal, 75c...... | 1 50 |
| | 1 original writ, $1; 1 copy writ and seal, 60c........................... | 1 60 |
| | Writ of sequestration................. | 1 50 |
| Jan. 1st, 1877. | Docket, 10c; entering agreement, 20c; copy agreement, 10c......... | 40 |
| | Judgment v. plaintiff, 50c; docket judgment 10c; docket costs, 5c | 65 |

|  |  |  |
|---|---|---|
| | Fee bill, 10c; bill of costs, 25c; satisfaction, 25c...................... | 60 |
| | Judgment v. defendant for costs, 50c; docket judgment, 10c; docket costs, 5c...................... | 65 |
| | Fee bill, 10c; bill of costs, 20c; satisfaction, 25c...................... | 55 |
| May 9th, 1879. | Issuing execution, $1; copying bill of costs on execution, 25c........ | 1 25 |
| Sept. 13th, 1879. | Sheriff S. L. Harris, serving 1 defendant................................ | 1 00 |
| | Executing order sequestration, $2; approving bond, 50c.......... .... | 2 50 |
| Jan. 1st, 1877. | Sheriff M. H. Smith, A. and P.... | 15 |

$12 55

CREDIT.

Clerk James Wright................................$3 83
Sheriff S. L. Harris................................. 1 75
Sheriff M. H. Smith................................. 07

$5 65

Balance due..................................................$6 90
L. and R.................. ................................ 2 00
*Tribune* advertisement.................................. 6 00

The items in this bill of costs, dated in 1879, were all subsequent to the amounts due when the judgment was rendered, and were occasioned by the proceedings under the execution. As such they constituted no lien anterior to the deed of trust.

The sheriff advertised, under levy made of said execution, the land aforesaid for sale. The day of sale was fixed *one day before* that under the deed of trust, and during the sitting of the circuit court.

The evidence shows that Bell continued to reside in Livingston county, for perhaps, two years after the rendition of said judgment for costs, and was, during that time,

the owner of $800 or $1,000 worth of personal property; and no attempt appears to have been made by said clerk to collect these costs from him while he remained in the county. He seems to have abandoned the land in question, in the spring of 1879, and went to Colorado. The defendants agreed among themselves to buy in this land at the sheriff's sale. The defendant, Monroe, did the bidding, and bought in 240 acres of it at $2 50 for each 40 acre tract. Mead, at once prepared the deed, and the sheriff acknowledged it the next day in court, before the land was sold under the trust deed, and the sheriff's deed was put to record the same day.

It does not appear that Miss Thompson, the beneficiary in the deed of trust, knew anything of this sale under said judgment, until it was consummated. The gentleman who made out the abstract, or examined the title to this land, preparatory to her making the loan, saw the said judgment for costs. On the day of the trustee's sale, and after its completion, the said Jane Thompson instituted this suit against said Monroe and Mead, to set aside said sheriff's sale and deed.

The petition set up, substantially, the facts aforesaid, charging the defendants with a fraudulent combination to obtain title to said land, in fraud of the plaintiff's deed; with preventing bidding at said sale, with obtaining the land at a grossly inadequate price, and charging that said costs were in fact paid at the time of the suing out of the execution, and that the alleged judgment was only a memorandum, etc. Other matters arising on the petition will be noticed in the course of the opinion.

The court found the issues for the defendants and dismissed the bill, from which judgment the plaintiff has appealed to this court, since which time the plaintiff, Jane Thompson, has died, and the present parties substituted as devisees, etc.

I. The first important point urged by respondents' counsel, against the relief sought, is, that on its face the

petition shows that the plaintiff had an adequate remedy at law. It is contended that the petition affirms that there was no judgment of record to support the execution and sheriff's deed; and, if so, the plaintiff had a clear remedy by ejectment. *Janney v. Spedden*, 38 Mo. 395; *Holland v. Johnson*, 80 Mo. 34. But is this a correct and fair construction of the allegations of the petition? They are as follows: "That there was in the office of the circuit court clerk of Livingston county, Missouri, in the judgment docket, a memorandum of judgment against said Edwin J. Bell for about the sum of $6.90, and no more, and plaintiff alleges that there was no record of any judgment whatever, in the record of judgments in said circuit court, in any cause between said parties against said Bell, nor has there ever been any judgment entered of record against said Bell, in favor of said J. M. Henry, for any sum whatever."

It is averred that there was a memorandum of judgment "in the judgment docket." This was the substantive fact alleged. Its legal effect, when exhibited to the court on trial, was a matter for the court. If this memorandum of judgment appeared in the judgment docket, that of itself, might support the execution. Freeman on Judgments, § 38. The succeeding statement should be understood as pertaining rather to a legal deduction from the fact premised, than the statement of an independent, substantive fact. This is manifest from the conclusion of the sentence, which charges that the judgment in question, was not "for any sum whatever." It being a judgment only for costs, it is manifest the object of the pleader was to present for judicial consideration the legal effect of the entry called a judgment.

II. It is next asserted, that if the sale attacked did not have the effect to pass the legal title, the plaintiff being out of possession, has no standing in a court of equity to have the deed vacated as a cloud on plaintiff's title. This proposition of law is generally correct. *Clark v. Ins. Co.*, 52 Mo. 272; *Keane v. Kyne*, 66 Mo. 216. This doc-

trine rests on the fact, that the defect in the title assailed, appears of record, through which the defendant must claim. In such case the action of ejectment will hit the blot. But where the judgment roll, for instance, does not, on its face, disclose the infirmity, and resort must be had to extrinsic evidence, especially parol evidence, to establish the vitiating fact, the right to invoke the aid of a court of equity is clear. Cases above cited.

The question then to be determined, is, whether the judgment, under which defendants claim, was a nullity. The court rendering it had jurisdiction over the parties and the subject matter. § 18, p. 344 Wag. Stat.. The judgment entered on filing the stipulation between the parties, was not objected to by either party, nor was it appealed from. It authorized the clerk to issue an execution thereon, as provided by section 32, p. 347, Wag. Stat.

One of the principle criticisms made by appellants' counsel on this judgment is, that no sum is specified therein as the amount of the costs. The usual form of judgments for costs is, that the party prevailing have, and recover his costs in this behalf laid out and expended. The costs are noted in the fee book kept by the clerk, and are certified by him in the execution as taxed at so much. Such a judgment for costs, being a final disposition of the case, is like any other final money judgment of the circuit court, and constitutes a lien for the costs then existing in favor of the party prevailing. *McKnight v. Spain*, 13 Mo. 534; *Bobb v. Graham*, Mo. Court of App. recently decided.

It follows that the judgment in question must be assailed, if at all on some fact arising outside of the judgment and the face of the execution. This presents, therefore, a case for equitable interposition.

III. Lying at the very threshold of this branch of the discussion is the fact, that one of the defendant purchasers is the deputy clerk of the court in which the judgment was rendered. He issued the execution and made up the bill of costs. From this bill of costs it appears that

the whole amount, accrued at the date of the judgment, was only $7.65, one-half of which is $3.87 chargeable to Bell. On that sum of $7.65 the cost bill showed the sum of $5.65 then paid, leaving a balance of only $2 unpaid. There is every reason to believe that the credit of $5.65 was paid by Bell. He was plaintiff in the suit, and the sums paid were to the clerk and sheriffs, presumably for preliminary fees for issuing and serving process. This presumption is the more to be indulged because the defendant, Munroe, though testifying in the case, made no denial of this fact. Then Bell had paid more than his half, and he was entitled rather to an execution against Henry for his costs.

Again, if the statutory regulation of fees, (Wag. Stat., p. 623, § 10,) were applied critically to this bill of costs, it would show that there are over $2 of illegal fees taxed up. Notwithstanding all this, the deputy clerk issued execution against Bell for all the costs, and none against Henry. It is difficult for an impartial mind to resist the belief that all concerned regarded these costs as fully paid and satisfied. The judgment was rendered in January, 1877. Bell was living for two years thereafter in that county. He had ample personal property out of which these fees could have been made at any time, on simple fee-bill. Not until after Bell left the county, and Miss Thompson advertised this land for her just debt, did the deputy clerk seem to think of this small sum coming to the officers of the court. Neither Henry, in whose behalf the judgment was rendered, nor the chief clerk to whom that part of the fees belonged, directed this zealous officer to issue the writ. He was under a misapprehension, too, of the law, if he supposed he could, *sua sponte*, issue this execution merely to collect fees due the court officers. For such fees the remedy of the officers is by fee-bill, as provided in section 1, page 618, Wagner's Statutes—section 5595, Revised Statutes. The judgment for costs is in favor of the litigant, to reimburse him for what he has paid out and expended, and he is entitled to

20—81

have execution therefor. Over that judgment the party, in whose favor it is rendered, has absolute control. It is his property. He may enforce or forgive it at his pleasure. Under similar statutes in the state of Illinois this view is strongly maintained. In *Roddick v. Cloud*, 2 Gil. 670, after reviewing the statutes, the court say; "There can be no doubt of the right of the officers interested in the fee-bill delivered, as an execution against the defendants, to control it. And the sheriff is liable to their orders, except in relation to his own fees, as much as he is to the orders of the plaintiff in execution, in relation to it. But not so in relation to the execution. That is the plaintiff's process ; the officers have no right to control it. The plaintiffs may forgive the debt and costs, if they choose, and officers have no right to interfere. The plaintiffs are liable in the first instance, to the officers for their costs, and are entitled to recover them of the defendant to reimburse themselves.      *      * Under this view of the case, it would be extremely inconvenient to allow each and every one interested in the costs to take control of the plaintiffs' process, by which their satisfaction might be hazarded or lost, or great delay and expense incurred." This doctrine is re-asserted in *Newkirk v. Chapron*, 17 Ill. 344 ; *Wickliff v. Robinson*, 18 Ill. 145. See, also, Freeman on Ex., § 21 ; *McClanahan v. Smith*, 76 Mo. 428.

The only seeming exception to the foregoing text, is found in section 32, page 347, Wagner's Statutes : "In all cases where costs shall be awarded, either before or upon final judgment, execution shall be awarded therefor, forthwith, by the clerk, unless otherwise ordered by the party in whose favor such costs shall be awarded." By this the clerk is authorized to issue execution *forthwith*, unless otherwise ordered. This provision is based on the presumption that the party prevailing wants his costs, and the clerk, without waiting for special direction, may issue the writ forthwith. This is solely for the benefit of the party to whom the judgment is awarded. After the lapse of two

years, as in this case, when Henry, the owner of the judg-
ment, had not ordered it, what business had the deputy
clerk with it? The time when the statute contemplated
he would issue it in behalf of the execution creditor had
long since passed. The suddenly awakened zeal of the
deputy clerk, after a two years inaction, in a matter where
he had no personal interest to subserve, is very significant.

It would require much credulity and charity to accredit
his marked activity, at the time in question, to a sense of
loyalty to his principal. We could have more faith in the
unselfish integrity of his conduct, had he bid in the land
in the name of those he professed to serve. If his purpose
was not to circumvent and wrong Miss Thompson, to ac-
quire an unconscionable advantage over a non-resident and
unsuspecting creditor, and sought only to collect fees, why
did not he advise her or her friends of the subjection of the
land to such costs, and afford her an opportunity to pay
them and save her large debt? The deed of trust was on
record under the eyes of the deputy recorder, informing
him of the residence of the plaintiff. Why did not these
defendants fix the day of sale on that when the plaintiff
presumably would be there to attend her own sale? Why
the haste in having the sheriff execute the deed and getting
it on record?

The transaction is indefensible. Justice would be both
blind and deaf not to rebuke it. Here are 240 acres of
land, worth $2,400, sacrificed to collect a most inconsider-
able fee of two or three dollars due, questionably, when the
execution was issued. These defendants bought it in at
less than seven cents an acre, when two acres would have
more than satisfied the claim.

It is not necessary to maintain this opinion, that we
should controvert the proposition, so ably discussed by
counsel, that mere inadequacy of price would not be sufficient
to avoid an execution sale. We approve the following
enunciation of Judge Wagner in *Parker v. H. & St. J. R.
R. Co.*, 44 Mo. 421: "The mere fact that the lands sold

for an inadequate price, would not of itself be sufficient ground to set the sale aside. But when a man obtains an estate worth thousands for a mere pittance, a few dollars—if he is permitted to retain the same, it is necessary that he should have been guilty of no misconduct, and that he should have acted with the most exact good faith." See also, *Nelson v. Brown*, 23 Mo. 13. We have already shown that these parties are not within the exception. Super-added to what has been developed, it is most pertinent to observe, that these parties occupied official positions which should have, at once, suggested to them the gross impropriety of the adventure. One was the trusted custodian of the record of judgments, and the fee books of the circuit court. The other was the custodian of the recorded titles and filed deeds of the recorder's office. As such public, trusted servants, it very justly tends to breed distrust and uneasiness in the public mind, when such officers are found taking advantage of their position to speculate on matters within their trust. The courts should scan such transactions narrowly, and search them through and through. *Massey v. Young*, 73 Mo. 260.

III. The respondent finally contends that, under the deed of trust, all the trustees were required to attend and participate in the sale thereunder. Only one trustee appears from the evidence to have been present, although all joined in the trustee deed. The deed of trust is made to the three trustees " as joint tenants, and not as tenants in common." The following authorities are cited to show that " they all form, as it were, one collective trustee": 1 Perry on Trusts, § 411; *Powell v. Tuttle*, 3 Comst. 396; *Smith v. Wildman*, 37 Conn. 384; *White v. Watkins*, 23 Mo. 423.

This may all be conceded, yet we think, without the legal title, the plaintiff had such a *status* toward this property as entitled her to come into court to protect her security. After condition broken, she was entitled to take possession of the property. She had a right, as the bene-

ficial owner or lienor, to protect her security against the contingency of a transfer by defendants to a stranger. Their title, whatever it was, was a fraud against her, and a wrong which she had a right to throttle in its incipiency.

The judgment of the circuit court is reversed, and the cause remanded, with directions to the court to enter up the proper decree, setting aside the sheriff's sale and nullifying the sheriff's deed in question, with judgment for costs against the defendants. Ewing, C., concurs; Martin, C., concurs in the result.

MARTIN, C., CONCURRING.—I concur in the opinion reversing the case on account of the equity disclosed in the facts in evidence. But I do not concur in so much of the opinion as denies to the officers of the court, under all circumstances, final process by execution for the collection of costs taxed in their favor. I regard the costs, as taxed in the fee-book in favor of the officers of the court, as collectible on execution. They constitute a lien. And the process, upon a judgment for costs, necessarily is for the benefit of the persons in whose favor they are taxed. If the plaintiff has advanced them, he is entitled to receive them. If he has not advanced them, he has no right to receive them. Neither can he, in such case, discharge them. To place the command of an execution for costs, which the plaintiff has never paid, entirely at his disposal, would result in a possible defeat of the undoubted lien of officers for costs.

A fee-bill cannot be levied upon realty. If the party can refuse execution when necessary to collect costs of court, then the officers would be compelled to resort to equity for enforcement of their lien. When the costs cannot be collected on fee-bill, and the party has refused or failed to pay the costs, presumably covered by the judgment, the officers of the court are entitled to process by execution for their costs, even though the plaintiff may refuse to order one.

These views are in accord with our statutes and decisions. When the costs taxed in favor of the officers have

not been paid by the parties, the execution for costs contemplated by the statute is necessarily for their use to the extent of such fees.

In a case in which there can be no presumption of payment, as in the case of a pauper, the execution is declared to be for their use. The presumption of payment by the parties is not a conclusive one, and whenever, in truth, the costs have not been paid by the parties, the presumption is rebutted by taxation in favor of those to whom they remain due, and in every such case the execution is for their use, and not for the use of the parties.