CITY OF AURORA *ex rel.* WILLIAMS, *Collector, et al.* v. LINDSAY *et al., Appellants.*

Division One, December 8, 1898.

1. **Executions:** RETURN TERM: MOTION TO RECALL EXECUTION. Judgment was rendered in a justice's court on September 18, a transcript thereof filed in circuit court, and the property sold under execution at the next term in February. *Held,* under these circumstances, that the next term of court in August was the return term of the execution. *Held,* also, that a motion filed in June, before the beginning of the August term,· to set aside the judgment of the justice, to recall the execution and to set aside the sale, was filed in proper time.

2. ———: MOTION TO RECALL. A motion to recall execution, made after sale and before return term of the writ, is the proper procedure to avoid any injustice done by the sale.

3. **City Taxes:** SUITS TO COLLECT SAME: PARTIES. Suits to collect delinquent city taxes should be brought in the name of the city at the relation of the city collector, under section 1604, Revised Statutes 1889, and not in the name of the State at the relation of the county collector under section 7672 *et seq.*

4. ———: ———: NOTICE BY PUBLICATION. Section 1604 (R. S. 1889), requiring in suits before a justice of the peace for city taxes, that the last publication of the notice be at least ten days before the trial, is not in conflict with section 2028, which requires "the last publication to be at least fifteen days before the commencement of the term at which the defendant is required to appear."

5. ———: ———: JUDGMENT AFTER PAYMENT. If the owner of a lot offers to pay delinquent city taxes, and the city collector examines his books and informs the owner that there are no suits for taxes pending against the property, and accepts payment of the taxes, the city's claim and lien for taxes is discharged, and a judgment thereafter rendered is void, even though the owner never paid the costs of the suit which was in fact pending at the time of the payment.

6. ———: ———: PAYMENT AFTER JUDGMENT. And where the city collector, after an examination of the back tax book, informs the owner of a lot that there had been no suit for the delinquent taxes, and accepts payment, the tax lien is extinguished, notwithstanding the claim for taxes at the time of the payment had been merged into a judgment—nothing appearing to show that the owner at the time of the payment knew that the judgment had been rendered or that any demand had ever been made on him for the costs. And a filing of a transcript of the judgment thereafter in the circuit court by the city collector, and the issuance of an execution and sale thereunder, at his instance, was fraud on the rights of the owner, and the execution must therefore be quashed and the deed set aside. (Upon the facts stated in the opinion, WILLIAMS, J., holds the sale and deed should be set aside; and BRACE and ROBINSON, JJ., concur, upon the facts stated, in canceling the deed, but dissent from the opinion.)

*Appeal from Lawrence Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED AND REMANDED (*with directions*).

*Edw. J. White* for appellants.

(1) A motion to set aside a sale under execution filed in the original cause, before the return term of the execution, is the proper mode of proceeding for the purpose, and a purchaser under the execution can be brought in by notice of the pendency of the motion. *State ex rel. Yancy*, 61 Mo. App. 397; *Am. Wine Co. v. Scholer*, 13 Mo. App. 345; Freeman on Executions, secs. 306–310. (2) Section 7662, Revised Statutes 1889, being an adoption in the revision of the law of 1883, and a later general act, inconsistent with the provisions of the act of 1881, it is manifest that

it was the intention of the legislature that it should
control, and that such suits should be maintained
in the name of the State of Missouri.    Such is the
rule of construction applied to inconsistent enact-
ments.    *State ex rel. v. St. Joseph's Convent*, 116 Mo.
575; *St. Joseph's, etc., Co. v. Shambaugh*, 106 Mo.
557; *St. Joseph's, etc., Co. v. Cudmore*, 103 Mo. 634.
(3) The judgment was void, because of the fraud used
in its procurement.    *Irvin v. Leyh*, 102 Mo. 200;
*Myers v. Miller*, 55 Mo. App. 338; *Callahan v. Griswold*,
9 Mo. 457; *Lewis v. McCabe*, 76 Mo. 309.    (4) The pay-
ment of the tax discharged the lien therefor and the
judgment subsequently rendered was void.    Black on
Tax Titles, sec. 156; *Huber v. Pickler*, 94 Mo. 382.
(5) The justice of peace had no jurisdiction to enter-
tain the suit or render the judgment under which the
sale was had.    Wells Jur. of Courts, sec. 65; R. S.
1889, secs. 6124, 6159, 7681; *State ex rel. v. Hopkins*,
87 Mo. 519; *Pleasant Hill v. Dasher*, 120 Mo. 675.

*J. W. Leake* and *R. H. Davis* for respondents.

(1) A motion filed at a term subsequent to the re-
turn term of the execution is out of time and is not the
proper remedy.    *St. Louis v. Brooks*, 107 Mo. 380;
*Am. Wine Co. v. Scholer*, 85 Mo. 496; *McKee v.
Logan*, 82 Mo. 524; *Downing v. Still*, 43 Mo. 321.
(2) Admitting, for the purpose of the argument, that
the judgment was procured through fraud, still that
would not avail appellants for the following reasons,
viz:    (*a*) The evidence does not show, or attempt to
show, that Owen, the purchaser at the tax sale, was a
privy to or had any knowledge or intimation of such
fraud.    To affect the interest of third parties, it must
be shown that they were a party to or had knowledge
of the fraud.    (*b*) The question of fraud, in the

procurement of the judgment and in the sale can not be inquired into on motion to set aside judgment and sale. *Holden v. Vaughan*, 64 Mo. 589; *Philips v. Evans*, 64 Mo. 23. (*c*) The circuit court has no power to vacate on motion a judgment obtained before a justice of the peace. 1 Black on Judg., sec. 297; *Holden v. Vaughan*, 64 Mo. 589. (3) Payment is a matter of defense, and a judgment which has been rendered for taxes which have been paid is not void. *Jones v. Driskill*, 94 Mo. 170, *Gibbs v. Southern*, 116 Mo.

MARSHALL, J.—Motion to set aside a judgment and to recall the execution issued thereon, and to set aside the sale had thereunder.

On the 3rd of July, 1894, a suit, entitled "City of Aurora ex rel. John A. Williams as the City Collector, Plaintiff, v. John A. Lindsay, Defendant," was instituted before a justice of the peace for Aurora township, Lawrence county, Missouri, to collect seventy-five cents for city taxes due the city of Aurora, on lot 98, block 12, in Linzee's second addition to said city, for the years 1891, 1892 and 1893. A summons for defendant was issued and returned, "not found," etc., on July 18th, 1894. Thereupon an order of publication was granted returnable September 18th, 1894. The proof of publication showed it was published for four successive weeks in the Aurora Gazette, the last publication being at least *ten* days before the day set for trial. The defendant did not reside in Lawrence county at the date of the institution of the suit, and did not appear in the case. On the 18th of September, 1894, the justice rendered judgment by default against defendant and adjudged it a special lien against the said real estate, directed that it be enforced, and the real estate, or so much as was necessary, be sold to satisfy the judgment, and that a special execution issue therefor.

The plaintiff caused a transcript of the judgment to be filed in the circuit clerk's office, and an execution to be issued thereon, under which the sheriff levied on said real estate and sold it at the February term, 1895, of the circuit court of Lawrence county, to A. L. Owen, for $100, and he placed his deed on record.

Prior to the institution of the tax suit, to wit, on February 25th, 1893, John A. Lindsay executed a deed of trust on the land to Otto L. Mersman, trustee for the Missouri Savings & Loan Co., which was duly recorded in Lawrence county on February 27th, 1893.

Prior to the institution of the tax suit, to wit, some time in February, 1893, Lindsay conveyed the equity of redemption in the land to L. T. Mathews, but the deed was not recorded before the tax suit was begun.

On the 10th of June, 1895, Lindsay, Mathews and the Missouri Savings and Loan Association, filed this motion in the circuit court asking that the judgment of the justice be set aside, that the execution issued thereon be recalled, and the sale thereunder be set aside. Upon notice duly served, the plaintiff and A. L. Owen, the purchaser at the sheriff's sale, were brought into the circuit court, appeared and defended. There was a trial in the circuit court, on which it appeared that Mathews, the grantee, of Lindsay, owned the equity of redemption, by an unrecorded deed at the time the suit was commenced. After the suit was begun Mathews went to Williams' (the collector's) office to pay the taxes on the land. Upon Williams' inquiry Mathews told him he had purchased the land from Lindsay. Williams said there was a suit pending against some of Lindsay's property, for taxes, but after ascertaining the number of this lot said it was not included in the suit, and that the taxes for the years 1892

and 1893 were due. Mathews then paid those taxes and Williams gave him a receipt for them. Five or six days later Williams notified Mathews that he had paid the taxes on the wrong lot and that he would have to give up the receipts and take back his money. Mathews said the taxes were paid on the lot he had bought, and refused to give up the receipts or take back the money. Thereupon Williams told him there was a suit pending against the lot for taxes and for this reason he would have to return the receipts and take back the money. Mathews refused to do this also. Three or four weeks later the justice of the peace before whom the case was pending told Mathews that he had failed to pay the taxes in full, that he had not paid the taxes for 1891. He and Mathews examined the papers and found the tax bill for 1891 attached to the others, the justice saying it had been there all the time. Mathews went to Williams and asked about the taxes for 1891. Williams replied they were in suit. Mathews replied there was no suit for the taxes for 1891. Williams examined his books and said that was right, and accepted the money for the taxes and penalty (taxes 4 cents, penalty 1 cent) and gave Mathews a receipt for it. All this occurred before the judgment was entered on the 18th of September, 1894, except the payment of the taxes for 1891, which Mathews said he could not remember whether it was before or after the judgment. The tax receipts offered in evidence show that the taxes for 1892 and 1893 were paid 8—1—1894, and those for 1891 were paid 11—17—1894.

The circuit court overruled the motion and the parties thereto appealed.

I.

The jurisdiction of the circuit court to hear and determine this motion is challenged by plaintiff. It

is contended that the proper procedure would be by bill in equity and not by motion, because the motion was not filed during the term at which the sale took place or before the return term of the writ. The record does not show when the transcript from the justice was filed in the circuit clerk's office nor when the execution was issued. It simply recites that the sale under the judgment and execution was had at the February term, 1895. This motion was filed on the 10th of June, 1895, and was heard at the August term, 1895. The regular terms of the circuit court of the twenty-fourth judicial circuit are held in Lawrence county on the second Monday in February and the third Monday in August. The judgment before the justice was rendered on September 18th, 1894. Hence if the transcript was promptly filed in the circuit clerk's office and the execution issued, and the levy made, no sale could have been made until the circuit court was in session after the second Monday in February, 1895 (which was the eleventh day of February, 1895). Ordinarily executions are returnable to the next succeeding term after they are issued (R. S. Mo. 1889, sec. 4898). But if a sheriff *levies* an execution *before* the return term, he may proceed and sell at any time during the return term (*Karnes v. Alexander*, 92 Mo. 1. c. 672; *Huff v. Morton*, 94 Mo. 405). In this case, under these circumstances, the sale having been made during the February term, the August term became the return term of the execution. This motion was filed in June, and being before the beginning of the August term must be treated as having been filed in proper time.

The proceeding by motion was proper under the decisions of this court. *Ray v. Stobbs*, 28 Mo. 35; *Downing v. Still*, 43 Mo. 309; *Pockman v. Meatt*, 49 Mo. 1. c. 350; *Marx v. Fore*, 51 Mo. 1. c. 74; *McKee*

*v. Logan*, 82 Mo. l. c. 528; *American Wine Co. v. Scholer*, 85 Mo. 499; *Ibid*, 13 Mo. App. l. c. 349; *St. Louis v. Brooks*, 107 Mo. l. c. 384; *Nelson v. Brown*, 23 Mo. l. c. 20; *State ex rel. Beck v. Yancy*, 61 Mo. 397; *Lindell R. E. Co. v. Lindell*, 142 Mo. 61; Freeman on Executions [2 Ed.], sections 305-6-7-7a-8 and 310. The fact that the judgment was rendered by the justice, does not affect the controversy. It was the execution of the circuit court that did the damage, and that court alone had jurisdiction over its processes and was charged with the duty to see that no injustice was done under color of its writs.

## II.

The parties to the motion contend that the judgment of the justice is void, because the suit was in the name of the city on the relation of the city collector, whereas it should have been in the name of the State of Missouri on the relation of the county collector. The taxes for which the action was brought were, 1891, for city purposes, eight cents; 1892, for city purposes, twenty cents, and for bonds, ten cents; 1893, for city purposes, twenty cents, for bonds ten cents; penalties, seven cents.

The tax suit was brought under the provisions of section 1604, Revised Statutes of Missouri 1889, and it is claimed by the parties to the motion that it should have been brought under section 7672 *et seq.*, Revised Statutes 1889, that section 1604 is a mere continuation in 1889 of the laws of 1881 (Acts 1881, p. 59) and that the act of 1881 was repealed, by implication, by the Act of 1883 (Acts 1883, p. 150), and that the Act of 1883 is now section 7672 *et seq.* of the Revised Statutes of 1889.

On the other hand it is claimed that section 1604 is an act duly enacted by the 35th General Assembly,

and being later in date than the Act of 1883, and special in its nature, it repeals, by implication, the conflicting provisions of the Act of 1883, and its requirements must be observed in collecting taxes due cities of the fourth class.

An examination of the history of section 1604, as it appears in the Revised Statutes of 1889, discloses that the 35th General Assembly regularly adopted it as a part of the act revising the cities, towns and villages law of this State, with the exception that in the last sentence of the section the revisers have substituted the word "article" for the word "chapter" as it is in the original bill.

It is therefore the law now, and its provisions must be followed, rather than those of the Act of 1883 (being now section 7672 *et seq.*) in actions for the collection of taxes due cities of the fourth class.

## III.

It is next contended that the provisions of section 1604 providing that the last publication shall be at least *ten* days before the trial date, are in conflict with section 2028, Revised Statutes 1889, which requires the last publication to be at least *fifteen* days before the commencement of the term at which the defendant is required to appear.

This is untenable. The question was set at rest in *St. Louis v. Gleason,* 15 Mo. App., l. c. 31; 89 Mo., l. c. 72.

## IV.

Appellants claim that the judgment is void because of fraud used in its procurement, and that the lien of the judgment was discharged by the payment of the taxes, and hence that the execution sale by the

City of Aurora ex rel. v. Lindsay.

sheriff conveyed no title and that the deed should be canceled.

On the other hand plaintiff contends that although the taxes for 1892 and 1893 were paid before the judgment was rendered, the taxes for 1891 were not paid until afterwards, and that Lindsay knew he had not paid the costs of the suit, and that those costs were not paid at all.

The order of publication against Lindsay was not returnable until September 18th, 1894. The taxes for 1892 and 1893 were paid by Mathews, the grantee under Lindsay, on August 1st, 1894. At that time the plaintiff collector told Mathews that the taxes on this lot were due for the years 1892 and 1893 only, and that there was no suit pending therefor, and Mathews paid them and Williams gave full acquittance therefor. Williams, the collector, afterwards ascertained that a suit was pending therefor, and tried to get the receipts back from Mathews and to return the money on the pretense that the taxes were paid on the wrong lot, and when Mathews refused to do so on that ground, Williams then admitted his true purpose by saying that there was a suit pending for taxes, and for that reason Mathews would have to return the receipts and take back the money, which could only mean that Williams wanted to collect the costs of the suit. Even then Williams made no claim that the taxes for 1891 were delinquent and involved in the same suit with those of 1892 and 1893. Three or four weeks later the justice of the peace before whom the case was pending, told Mathews he had not paid the taxes in full; that the taxes for 1891 were involved in the suit and had not been paid. Upon Mathews and the justice of the peace examining the files, the tax bill for 1891 was found attached to the others and the justice said they had been there all the time. Mathews went to see Williams

about it, and he said the taxes for 1891 were in suit. Mathews denied this, and thereupon Williams examined his books and said the taxes for 1891 were not in suit, and Mathews paid them, with the penalty, and Williams gave him a receipt therefor. This last payment was on November 17th, 1894, which was about two months after the judgment. Notwithstanding the taxes for 1892 and 1893 had been paid on August 1st, 1894, the justice rendered judgment for the taxes for those years on the 18th of September, 1894, and notwithstanding the taxes for 1891 were paid on the 17th of November, 1894, the plaintiff caused a transcript of the justice's judgment to be filed in the circuit clerk's office, and had an execution issued thereon (the date is not shown) and had the property sold. It is thus apparent that when the judgment was rendered, the taxes for 1892 and 1893 were *satisfied*, and when the property was sold in February, 1895, the taxes for 1891 were satisfied. The only thing not paid was the costs, and this raises the question whether the execution sale passed any title to the land to the purchaser, and whether the lien of the judgment was discharged by the payment of the taxes before the sale.

It was the duty of the collector, under section 7681, Revised Statutes Mo. 1889, to note the fact on the back tax book, opposite the land, when any suit is begun therefor. So that when Williams examined his books when Mathews paid the taxes for 1892 and 1893, and told him there was no suit for taxes pending against this lot, and accepted the taxes, it extinguished the claim and discharged the lien, whether Williams made a mistake or not, and the judgment thereafter rendered against the land for those taxes was void. And when Williams told Mathews on November 17th, 1894, after examining the tax book, that there was no suit pending for the taxes for 1891, and accepted the taxes, it

extinguished the tax lien, notwithstanding the tax lien had become merged in the judgment lien. Section 7606, Revised Statutes 1889, makes it the duty of the collector to furnish a statement of the amount of taxes against any tract of land, to any person applying for it. Mathews therefore had a right to "set his mind at rest, seek no further, and be under the protection of the law." The unanswerable reasoning and clear logic employed by SHERWOOD, J., in *Harness v. Cravens*, 126 Mo. l. c. 254, is peculiarly applicable to this case, and is reaffirmed and adopted here.

In *Humphreys v. Leggett*, 9 How. 297 and in *Florat v. Handy*, 35 La. Ann. 816, it was held that where a claim was paid after the institution of the suit, and where it could not be brought to the attention of the court before judgment, the judgment might be enjoined. In Indiana and New York, it is held that injunction will lie to prevent the collection of a judgment that has been satisfied. *Bowen v. Clark*, 46 Ind. 405; *Mallory v. Norton*, 21 Barb. 424. But in *McRea v. Davis*, 5 Jones, Eq. 140, and in *Perrine v. Carlisle*, 19 Ala. 686 and in *Lansing v. Eddy*, 1 Johns., ch. 49, it was held that the proper procedure was to apply to the court out of which the fi. fa. issued, to quash it, when the judgment had been paid or satisfied.

Black on Tax Titles [2 Ed.], sec. 156, lays down the rule that when the tax is paid, the lien of the State is discharged, and a sale subsequently made is void. The author is amply supported in this statement by the many authorities he cites, among them *Huber v. Pickler*, 94 Mo. 382, and he adds: "In other words, actual delinquency is a condition precedent to the right to sell any realty under a tax assessment." To the same effect, see, *Hoge v. Hubb*, 94 Mo. l. c., 502; *Young v. Schofield*, 132 Mo. 650; *McClure v. Logan*, 59 Mo. 234. He further says: "And it is

immaterial whether the subsequent sale transpires through the inadvertence or mistake of the officer, or is made in positive disregard of the fact of payment; in either case the purchaser takes no title," citing in support of the text *Blight v. Banks*, 6 T. B. Mon. 192, and *Davis v. Hare*, 32 Ark. 386. Upon the faith of *Bracey v. Ray*, 26 La. Ann. 710, he also says: "Though if a tax is subject to be increased by the addition of a penalty, for delay in payment, but is actually received by the officer without the penalty, a sale can not afterwards be made for his penalty." The same principle applies to receiving the taxes and penalty without demanding the payment of the costs in the tax suit.

In *James & Ray, Ex Parte,* 59 Mo. 280, it appeared that the plaintiff assigned the cause of action and the assignee was substituted. The original plaintiff had given security for costs. The substituted plaintiff was insolvent, and gave no security. He was nonsuited on the trial. The court officers issued execution for costs against the original plaintiff and his sureties, and levied on their real estate. It was objected that a motion was not the proper remedy—that it should be by bill in equity, but NAPTON, J., in overruling this objection said: "But we think the sooner irregular proceedings are corrected in the court, and in the case where they occur, the more commendable will be the administration of justice. . . . . . . Motions now take the place of writs of *audita querela*, and of writs of error *coram nobis*."

The collector here took judgment for the taxes for 1892 and 1893, when he knew those taxes, with their penalties, had been paid, which was a fraud on the court. He accepted the taxes for 1891 (4 cents, with 1 cent penalty) after he had obtained judgment. He made no demand for costs, but agreed that Mathews was right that the taxes for that year were not in suit.

Mathews paid the taxes for 1892 and 1893, upon Williams' statement that they were not in suit, and that they were all the taxes that were due on the land, and he had a right "to set his mind at rest, seek no further, and be under the protection of the law." When he paid the taxes for 1891, it is not shown that he knew any judgment had been rendered. At no time does it appear that any demand was made upon him for any costs of suit. It was a fraud upon him for the plaintiff to file the transcript in the circuit court, issue execution and sell his land, if the plaintiff did it, and if it was the court officers who did it, the act was a nullity—they had no right to issue an execution for costs, their remedy was by fee bill. *Beedle v. Mead,* 81 Mo. 297.

For these reasons, the judgment of the circuit court is reversed and the cause remanded with directions to that court to recall and quash the execution and to set aside the sheriff's deed to A. L. Owen. WILLIAMS, J., concurs in the result; ROBINSON and BRACE, JJ., concur in reversing the judgment and remanding the cause with directions to cancel the deed, on the facts stated, but dissent from the opinion.

SEPARATE OPINION.

WILLIAMS, J.—I concur in the conclusion announced by Judge MARSHALL in the foregoing opinion. The motion to set aside the sale and quash the execution was presented at the return term and before the matter had passed beyond the power of the court under whose writ the sale was made. It still had control of its own process, and the right and duty remained to see that the same was not abused.

I do not think that under the facts stated in the opinion, the sale should receive the sanction of the court, and that as timely application was made therefor, it should be set aside.