## BAIRD, Appellant, v. GIVEN.

### Division One, November 26, 1902.

1. **Sheriff's Sale**: ILLEGAL EXECUTIONS: FOR COSTS ONLY: PURCHASER CHARGEABLE WITH KNOWLEDGE. A purchaser at a sheriff's sale of real estate is chargeable with the knowledge of the attorney who acts for him in the bidding, of the fact that the executions under which he is buying are illegal in that they call for the satisfaction of debts that have already been paid. Said executions are none the less illegal because they call for a small amount of costs which have not been paid. Furthermore, if the purchaser himself knew the judgments had been paid except as to costs, he is as much chargeable with the illegality of executions calling for the full amount of the judgments, as he would be had he been the plaintiff in execution. Nor does the fact that plaintiff's attorney bid in the land without disclosing the name of the party for whom he was bidding and afterwards had the sheriff make the deed to a defendant therein who knew the judgment had been satisfied, alter the case. Nor does the fact that the order to the clerk was to issue executions for costs only, for if the purchaser knew they were issued for both the debt and costs, whether by design or inadvertently, he is chargeable with knowledge of their illegality.

2. ——: ——: ——: ——: FAILURE TO TESTIFY. And in such case where the purchaser is in court during the entire trial and fails to testify, it will be inferred, if necessary, that the illegal executions under which he claims as an innocent purchaser, were issued at his procurement.

3. ——: ——: ——: DEED TO THIRD PARTY. If property is bid in for plaintiff in the execution and by his order or that of his attorney the sheriff makes his deed direct to another, it does not give to the title so acquired any different aspect than it would have had if the sheriff had made his deed to the plaintiff and the plaintiff had made a deed to the other.

4. ——: ——: PURCHASE BY JUDGMENT DEBTOR. Whatever amount a judgment defendant pays for land purchased by him at the sheriff's sale under execution, he in reality pays in satisfaction of the judgment, for the obligation to pay that judgment is his own, and the execution should be against him as well as the other judgment debtors. He is not, therefore, an innocent purchaser under an illegal execution.

5. ——: ILLEGAL EXECUTION: DEBTS PAID. Writs calling for the satisfaction of judgment debts which have been paid, although calling

Baird v. Given.

for the clerk's costs which have not been paid, are illegal in so far as any rights of plaintiffs in execution or any other person with knowledge of that fact can claim as arising out of them. Even an innocent purchaser derives no title at an execution sale under a satisfied judgment.

6. ————: ————: SALE FOR COSTS: DEED OF TRUST. The defendant and others were judgment debtors to the amount of $6,000 and costs, in suits which had been aided by attachments on a co-defendant's land, which antedated plaintiff's deed of trust by one day. The judgment debts and all the costs except $93.23, possibly except $16, had been paid, although the judgments were not satisfied, and of these facts the defendant well knew. The executions were issued for the entire amount of the debt recited in the judgment, and for costs, and defendant pointed out to the sheriff the land to be levied on, worth $1,500 or $2,000, and at the sale he became the purchaser for $106, and thus the plaintiff's deed of trust was cut out if the sheriff's sale is permitted to stand. *Held*, that as the plaintiff could have paid the costs if the executions had been for the right amount, or have made it bring its full value since the surplus over the amount of the costs would have been applicable to his debt, but being deterred from doing so when confronted with an execution for $6,000, the executions are illegal and the sale must be set aside.

Appeal from Randolph Circuit Court.—*Hon. Jno. A. Hockaday*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ellison & Campbell* for appellant.

(1) A sale under a judgment which has been paid passes no title even to an innocent purchaser. Huff v. Morton, 83 Mo. 402. (2) If a purchaser at sheriff's sale practices any deceit or is guilty of any trick or device for the purpose of getting the property at less than its value, the sale will be set aside. Stewart v. Nelson, 25 Mo. 309; Keiser v. Gammon, 95 Mo. 217. (3) A judgment creditor, or his assignee or agent or attorney alone has the right to cause an execution to issue. Burton v. Deleplain, 25 Mo. App. 382; Beedle v. Mead, 81 Mo. 306. (4) The defendant was in the courtroom during the entire trial—charged with a fraud —but did not testify, although it was shown "he knew the very heart of the transaction." Such failure is

tantamount to a confession of guilt. Leeper v. Bates, 85 Mo. 228; Ins. Co. v. Smith, 117 Mo. 294.

*Martin & Terrill* and *A. H. Waller* for respondent.

(1) Plaintiff's first contention is that the Bowers and Firth judgments had been fully paid before execution and sale, and that defendant's deed is, therefore, void. This contention is untenable for the reasons: (a) Because it affirmatively and positively appears from the evidence that the costs in these cases had not been paid, and were not paid until after the sale, at which time the sheriff paid them out of the sale money. (b) Said costs were component parts of said Bowers and Firth judgments and were taxed and adjudicated, and incorporated into, and made part of said judgments at the time of their rendition. It therefore follows that since these costs remained unpaid, executions could legally issue, and any of the property attached in these cases could be levied upon and sold. Beedle v. Mead, 81 Mo. 304; Bobb v. Graham, 15 Mo. App. 291; Wilson v. Stark, 47 Mo. App. 117. (2) Plaintiff also alleges fraud on defendant's part, in that defendant caused the special execution to issue in the Bowers and Firth cases under and by virtue of which the property in controversy was sold, and purchased by defendant. This contention can not be sustained for the reasons: (a) That defendant neither in person nor by agent, directly or indirectly, had any part in causing these executions to issue or the sale to be made. If any fact is clearly shown in this case, it is the fact that Martin & Terrill, Bowers' and Firth's attorneys, acting for said plaintiffs, and with their knowledge, ordered these executions to issue and the sale to be made. (b) The issue of said executions and the sale of said property could not have been a fraud on plaintiff or any one else in any aspect of the case, since all of the attached property was subject to execution and sale until these judgments were fully satisfied, and no reason can be perceived why Hannah's property

should have been held exempt on plaintiff's account. Plaintiff could have protected the property by paying these costs, and if he failed to so protect this property, and his own interests as well, it was due to his own laches, and not the fraud of others. (c) Defendant Given owed plaintiff no duty. The debt secured by the deed of trust given by Hannah was not defendant's debt. There is no pretense that plaintiff was at any time misled or lulled to sleep, or was kept in the dark by any trick or device of defendant or any other person during the twenty months that intervened between the time his mortgage debt fell due and said property was so levied upon and sold and purchased by defendant. (3) Mere inadequacy of price at a judicial sale does not avoid the sale or render the sale voidable in the absence of fraud or unconscionable advantage. In this case, however, with two titles outstanding already, at the time of the said sale under the Bowers and Firth judgments, and with every probability that the purchaser was buying a lawsuit, it can not be safely asserted that the price paid, $106.89, was so manifestly inadequate as to raise the presumption of fraud. Parker v. Railroad, 44 Mo. 421. (4) Judicial sales are not avoided because of irregularities by the officers, and in this case the act of the circuit clerk in issuing the executions for both debt and costs, when the executions should have been for costs alone, is a mere irregularity and affords no ground for setting the sale or deed aside. Strouse v. Drennon, 41 Mo. 289; Cabell v. Grubbs, 48 Mo. 353.

VALLIANT, J.—This is a suit in equity to set aside a sheriff's deed to land sold under two executions. The executions issued on judgments, one in favor of J. S. Bowers, the other in favor of William Firth, both against Adam Given, the defendant in this case, and O. E. Hannah and his wife. The suits in which the judgments were rendered were aided by attachments which were placed on the land in question, June 27,

Vol 170 mo—20.

1893. The title of this plaintiff to the land in suit comes through a deed of trust filed for record, June 28, 1893, so that the attachment lien was one day prior to the lien of the deed of trust. Both parties claim title from a common source, O. E. Hannah, who was one of the defendants in the attachment suits and the grantor in the deed of trust. The judgments were rendered at the February term, 1894, of the Randolph Circuit Court, the one in favor of Bowers being for $1,304.65 and costs, the one in favor of Firth for $4,991.26 and costs. After the rendition of these judgments they were both paid except the costs which for a while were left unpaid.

The testimony of one of defendant's witnesses tended to show that the sheriff's costs in both cases had been paid before the executions issued, leaving unpaid only the clerk's costs, amounting in both cases to about $16, and that testimony seems to be uncontradicted, although the defendant in his statement and brief contends that that is a mistake, that the sheriff's costs were also unpaid and that the aggregate amount of costs unpaid in the two cases was $91.23. There was no satisfaction of either judgment entered on the record. A year or more after the judgments had been paid as above stated, the defendant in this case, who was one of the judgment debtors in those cases, well knowing that the judgments had been paid, attempted to procure assignments of them to one Poland, his brother-in-law, and did obtain such an assignment of the Bowers judgment, for which he paid nothing, but failed to obtain an assignment from Firth. Shortly afterwards an execution issued on each judgment for the full amount of debt and costs, under which the sheriff sold the land in question. At the sale the land was bid in by one of the attorneys of record of the judgment creditors for the sum of $106. The land was worth from $1,500 to $2,000. It was levied upon as the property of O. E. Hannah, one of the defendants in execution. When the attorney bid in the property at the sale he did not announce the name of the person for whom he bought, but

within a few days thereafter directed the sheriff to execute the deed to the defendant in this suit, and that was done. The execution was issued by order of one of the attorneys for the judgment creditors, but not at the request of either of them. There was evidence in the case from which plaintiff draws the conclusion that the attorney who gave the order for the execution was, in so doing, acting for the defendant in this case, but the attorney denied that and testified that he ordered the executions because the officers were pressing him for the costs and he considered it his duty to do so. It is unnecessary to set out in this statement all the matters in detail which are discussed in the briefs, as the facts above stated, which are practically undisputed, must control the judgment. The trial court found for the defendant and rendered a decree dismissing the plaintiff's bill, from which the plaintiff appeals.

One of the points in dispute is the alleged agency of the defendant in procuring the issuance of the executions and the sale thereunder. If that were a vital point in the case the plaintiff would be justified in drawing, as he does, an inference unfavorable to the defendant from the fact that defendant was in court during the whole trial yet remained silent and did not go on the witness stand. But it is not material whether the defendant procured the executions to issue or not; he was fully conversant of all the facts. He was one of the defendants in execution and knew that the judgments, except as to costs, had been paid, yet he participated in the proceeding to the extent at least of becoming the purchaser at the sale. There is also some question as to whether the attorney who bid in the property did so as the agent of the defendant, and for him, or as the attorney for the plaintiffs in execution. But that is also immaterial under the other facts in the case. If the attorney was acting for the defendant the latter was chargeable with the attorney's knowledge of the facts and knew that the executions under which he was buying were illegal, in that they were calling for satisfaction of debts amounting to more than $6,000 that had al-

ready been paid and which executions were none the less illegal because they also called for a small amount of costs that had not been paid. If on the other hand the attorney was not acting as the agent of the defendant, then he was acting as the attorney for the plaintiffs in execution and his purchase was as trustee for his clients. Now, what kind of title could those plaintiffs in those executions acquire at such a sale? If the property was bid in for the plaintiffs in execution they were the real purchasers, and the fact that the sheriff's deed was, by order of their attorney, made direct to the defendant, does not give to the title so acquired by defendant any different aspect than it would have had if the sheriff's deed had been made to the plaintiffs in execution and they had made a deed to defendant. A court of equity looks through mere form and deals with the substance. And it is also immaterial, as it affects the result in this case, whether the order to the clerk to issue the executions was to issue them for the debt as well as the costs or for the costs only. The fact is, whether by design or by inadvertence, they were issued for the full amounts of the judgments, and with the full knowledge of that fact on the part of those plaintiffs and this defendant the sheriff proceeded to execute them. Even if the order had been to issue executions for costs only, the parties knew that the writs were not so issued, yet accepted them as they were and are as responsible as if they had expressly so ordered them.

In addition to the foregoing there is another fact that an equity court can not overlook. Those judgments were against this defendant as well as against the Hannahs, and whatever costs were due he was bound to pay. Whatever he paid, therefore, as for the purchase of the land, he in reality paid in satisfaction of his own obligation. The executions were or should have been against him as well as the other judgment debtors. [Freeman on Ex., sec. 42; Zelle v. Bobb, 14 Mo. App. 267; 8 Ency. Pl. and Pr., 420.]

If the defendant had been acting in reference to this matter as one would naturally have acted in de-

fense of an adverse writ, he would have moved the court or the judge in vacation, as he could successfully have done, to recall and quash the executions. But instead of doing that he pointed out to the sheriff, to be levied upon, this land which belonged to his co-defendant in execution who was a non-resident and absent from the State.

From whatever point of view we look at the case it is impossible to see the defendant in the aspect of an innocent purchaser. Even an innocent purchaser derives no title at an execution sale under a satisfied judgment. [McClure v. Logan, 59 Mo. 234; see also 8 Ency. Pl. and Pr., 324, and cases cited in note.]

The judgments in question were practically satisfied and the defendant knew it. It is true, if the plaintiffs in execution had for their own protection seen fit to sue out executions for the costs which they had paid, or for which they were liable, they could have done so (Beedle v. Mead, 81 Mo. 297; Hoover v. Railroad, 115 Mo. 77), but they did not do so; they sued out writs calling for the satisfaction of debts which had already been satisfied. The writs were therefore illegal in so far as any rights which those plaintiffs in execution or any other person with knowledge of the facts could claim as arising out of them. [Weston v. Clark, 37 Mo. 568.]

When those executions came into the sheriff's hands he not only had authority to levy $6,000 or more on the property of the defendants therein, but it was his bounden duty to do so; he had no right to dispute the writs. [Sec. 3220, R. S. 1899; 8 Ency. Pl. and Pr., 323, and cases cited in note.] And in fact he did sell property worth from $1,500 to $2,000, all that was pointed out to him. If the executions had commanded him to make only the amount of costs, whether it was $16 as the plaintiff claims, or $91.23 as the defendant claims, the sheriff would have been liable as for an excessive levy for selling this land if he could have made the amount out of less property.

And if the sheriff was offering the land for sale

under a fee bill or execution for costs only, this plaintiff, to protect his deed of trust, could have paid the amount or bid in the property, because his mortgage debt stood next to the judgments, and he could with safety have made the property bring its full value since the surplus over the amount of the costs due would have been applicable to his debt. But when he was confronted with executions calling for $6,000 or more he had every reason to presume that the plaintiffs in execution would run the property up as they could do on their $6,000 debts so as to leave no margin for him. Thus the plaintiffs in execution, or the defendant in their shoes, had an unfair advantage and were enabled to take in $1,500 or $2,000 worth of property for $106 and shut out this plaintiff's deed of trust. A court of equity will not allow that to be done.

The judgment is reversed and the cause remanded to the circuit court with directions to enter a decree to the effect that the sheriff's deed to the defendant described in the petition, dated March 15, 1896, recorded in the office of the recorder of deeds of Randolph county in book 51, page 410 and following, be cancelled as a cloud on the plaintiff's title, that defendant render possession of the land to the plaintiff, and pay the costs of this suit. All concur.